WILLIAM JUDSON, APPELLANT, *v.* WILLIAM W. CORCORAN.

Where a prior assignee of a claim against Mexico gave no information of the assignment until a subsequent assignee had prosecuted the claim before the commissioners, and obtained an award in his favor, the equities of these parties were equal, and the possessor of the legal title ought to retain the fund.

The award was not conclusive amongst the claimants. The decision of a former court upon this point again affirmed.

The cases examined respecting the relative equities of prior and subsequent assignees of a *chose in action.*

THIS was an appeal from the circuit court of the United States for the District of Columbia, holden in and for the county of Washington.

The case is stated in the opinion of the court.

It was argued by *Mr. Lawrence* and *Mr. Coxe,* for the plaintiff in error, and by *Mr. Bradley* and *Mr. Carlisle,* for the defendant.

Mr. Justice CATRON delivered the opinion of the court.

Judson brought this suit in equity, to recover $6,000 from William W. Corcoran, in whose favor a decree had been made for about $15,000, by the board of commissioners acting according to the 15th article of our treaty with Mexico of 1848.

Corcoran claimed, as assignee, under Bradford B. Williams

and Joseph H. Lord, who were owners of the cargo of the ship Henry Thompson, and which was unlawfully seized and confiscated by the authorities of Mexico.

The claim having been presented to the mixed commission under the convention between the United States and Mexico, of April, 1839, the American members of that board made a report in favor of the claim; but the Mexican commissioners not concurring in the opinion of their colleagues, the case was referred to the umpire, and was returned by him without a decision. It therefore constituted one of that class of cases embraced in the 5th article of the unratified convention of the 20th November, 1843, and which is referred to and incorporated into the 15th article of the treaty of peace of Guadaloupe Hidalgo; and having been modified in some of its provisions, the ratifications were exchanged on 30th May, 1848.

On the 3d March, 1849, an act of congress was passed to carry some of the provisions of this treaty into effect. Among other things, it provided for the establishment of a board of commissioners, "whose duty it shall be to receive and examine all claims of citizens of the United States upon the Republic of Mexico, which are provided for by the treaty, and to decide thereon according to the provisions of the treaty."

On the 11th of June, 1845, Bradford B. Williams assigned one half of his interest in the claim in dispute to E. H. Warner. August 15, 1845, Warner assigned the same interest to William B. Hart. October 15, 1846, Williams assigned to Hart the residue of his interest. October 3, 1846, Joseph H. Lord assigned to Hart all his interest in the claim. June 18, 1847, Hart assigned the whole claim to William W. Corcoran.

"By these several assignments, (says the late board,) the whole became vested in the said William W. Corcoran, and the award was therefore made in his favor."

On the first day of January, 1845, Bradford B. Williams had assigned to William Judson, the complainant, an interest of $6,000, of the amount of the suspended claim pronounced valid by our commissioners, in 1842, with interest from the date of the assignment.

From January, 1845, to June, 1847, about two years and a half, Judson held his assignment without filing any notice of its existence at the Department of State, so that others might have notice of his interest, nor did he set up any pretension until the assignee, Corcoran, had prosecuted the claim to a final award, and was adjudged by the board of commissioners to be the legal owner of the amount awarded; and as legal owner Corcoran is sued.

In regard to the preliminary questions raised at the bar, it

may be remarked that we have no doubt the district court had authority to hear and determine the equities of the parties, notwithstanding the judgment in Corcoran's favor by the board of commissioners.    The question that an award like the present is not conclusive among adverse claimants, was settled in the case of Comegys v. Vasse, 1 Pet. 193, in 1828, and has not since been open.

And as respects the validity of assignments of claims like the one here presented, no question can be raised at this day, as such assignments have been recognized by the various boards of commissioners and the courts of justice for many years.    The case of Comegys v. Vasse, also adjudged this point.

The contest here depends on the merits.    Judson had the earliest assignment of part of the amount declared to be due to Williams, by the two United States commissioners, in 1842, to the extent of $6,000, and the claim assigned being a right depending on an equity against the government of Mexico, and assuming that both sets of assignments are alike fair, and originally stood on the same *bonâ fide* footing, the rule of necessity is, that the assignor having parted with his interest by the first assignment, the second assignee could take nothing; and, as he represents his assignor, is bound by the equities imposed on the latter; 1 White and Tudor's Eq. Ca. 236; and hence has arisen the maxim in such cases, that he who is first in time is best in right.    But this general rule has exceptions, and the case before us was obviously decided in the court below on an exception to the general rule.

Judson took his assignment in January, 1845, which he first produced in May, 1851, when this bill was filed.    In the mean time Corcoran had got his assignment, and immediately gave written notice of it to the Department of State, and August 17, 1847, received an answer from the secretary, recognizing the fact of notice having been received, and that it was filed with the documents of the postponed claim of Williams and Lord, appertaining to the unfinished award.

Corcoran's assignment was fair, and accepted on his part without knowledge of Judson's; nor is the contrary alleged in the bill.    And assuming Judson's to be fair also, and that no negligence could be imputed to him, then the case is one where an equity was successively assigned in a *chose in action* to two innocent persons, whose equities are equal, according to the moral rule governing a court of chancery.    Here, Corcoran has drawn to his equity a legal title to the fund, which legal title Judson seeks to set aside, and asks an affirmative decree in his favor to that effect.

Now, nothing is better settled than that this cannot be done. The equities being equal, the law must prevail.

There are other objections to the case made by the appellant, growing out of negligence on his part in not presenting his assignment and claim of property to the State Department, so as to notify others of the fact. The assignment was held up and operated as a latent and lurking transaction, calculated to circumvent subsequent assignees, and such would be its effect on Corcoran, were priority accorded to it by our decree. It is certainly true, as a general rule, as above stated, that a purchaser of a *chose in action*, or of an equitable title, must abide by the case of the person from whom he buys, and will only be entitled to the remedies of the seller; and yet, there may be cases in which a purchaser, by sustaining the character of a *bonâ fide* assignee, will be in a better situation than the person was of whom he bought; as, for instance, where the purchaser, who alone had made inquiry and given notice to the debtor, or to a trustee holding the fund, (as in this instance,) would be preferred over the prior purchaser, who neglected to give notice of his assignment, and warn others not to buy.

The cases of Dearle *v.* Hall, and Loveridge *v.* Cooper, 3 Russell's R. 1, 60, established the doctrine to the foregoing effect in England; they were followed in the case of Mangles *v.* Dixon, McNaughten and Gordon's R. 437. And the same principle of protecting subsequent *bonâ fide* purchasers of *choses in action*, &c., against latent outstanding equities, of which they had no notice, was maintained in this court in the case of Bayley *v.* Greenleaf, 7 Wheat. 46. That was an outstanding vendor's lien, set up to defeat a deed made to trustees for the benefit of the vendees' creditors. The court held it to be a secret trust; and although to be preferred to any other subsequent equity unconnected with a legal advantage, or equitable advantage, which gives a superior claim to the legal title, still, it must be postponed to a subsequent equal equity connected with such advantage.

The rule was distinctly asserted by Chancellor Kent, in 1817, in Murray *v.* Lylburn, 2 Johns. C. C. 442, before the question was settled in England, and before this court discussed it, which was in 1822. And the same principle was applied by the court of appeals of Virginia, in the case of Moore *v.* Holcombe, 3 Leigh's R. 597, in 1832.

Secondly. There is no satisfactory evidence, as we apprehend, to establish the fact that a sufficient consideration was paid by Judson to Williams for the assignment on which the bill is founded, to authorize Judson to set it up, and thereby to postpone Corcoran, who paid a full price, as did those under whom he claims; yet, as these objections depend on facts peculiar to this cause, we deem it useless to critically investigate them, as the decree below dismissing the bill was clearly proper, on the first and merely legal ground.

It is ordered that the decree be affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia, holden in and for the county of Washington, and was argued by counsel.   On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said circuit court in this cause be and the same is hereby affirmed, with costs.