### In re GILLESPIE and others, Bankrupts.

*(District Court, S. D. New York.* March 17, 1883.)

CHOSE IN ACTION—CONFLICTING ASSIGNMENTS.

> A subsequent *bona fide* assignee of a chose in action, who, for a valuable consideration, after due inquiry, and without notice of any prior assignment, gives immediate notice of the assignment to the debtor, or trustee of the fund, and takes possession of the evidences of debt, has a superior equity over a prior assignee of the same debt or fund, who leaves the evidences of the debt with the assignor, and gives no notice of the assignment to the debtor or trustee.

In Bankruptcy.

The firm of Gillespie & Co. having been adjudicated bankrupts, T. J. Daly & Co., holders of four promissory notes of the bankrupts, payable to their own order and indorsed in blank, proved the notes in bankruptcy, and in March, 1874, received a dividend of 25 per cent. thereon, which was indorsed upon the notes. Afterwards, on September 13, 1875, Daly & Co., being in embarrassed circumstances, made a composition with their own creditors, and, for the purpose of securing payment of certain composition notes, executed an assignment of all their assets to Amasa A. Redfield, among which assets the claim against the Gillespie estate was mentioned. The Gillespie notes were not delivered to Redfield, nor did the latter notify the assignee in bankruptcy of the transfer to him. On the ninth of December, 1876, Daly & Co., being still in possession of the notes, received from the assignee of Gillespie a further dividend of 5 per cent., which was likewise indorsed upon the notes, and the receipt thereof

signed by T. J. Daly & Co. On July 5, 1877, Daly & Co. applied to Hatch & Sons for a loan upon the security of the Gillespie notes, and further dividends expected thereon. Hatch & Sons made inquiry of Gillespie's assignee, and being informed that a further dividend would be payable, and having no information of the prior assignment to Redfield, made advances upon the notes which were delivered to them by Daly & Co., and at once notified the assignee in bankruptcy of the transfer, and that all further dividends would be payable to them. Redfield gave notice of his claim to the assignee for the first time on March 25, 1880, and claimed that any future dividends should be paid to him. Under these conflicting claims, a subsequent dividend on the Gillespie notes of $717.92 was deposited in the registry of this court, and both assignees have presented petitions claiming the dividend under the assignments above stated.

*Ward & Jenks*, for Hatch & Sons.

*E. C. Delavan* and *J. P. Lowery*, for Redfield.

BROWN, J. The question involved in the rival claims to this dividend has been differently decided by high authorities. The claim for the dividend is not a claim strictly upon the note against the maker, but a claim for payment from the assignee of the bankrupt upon the proof of the bankrupt's notes made prior to assignment to either of the rival claimants. In this view I cannot distinguish it from the case of *Muir* v. *Schenck*, 3 Hill, 228, and *Cooper* v. *Fynmore*, 3 Russ. 60. And upon these authorities, Redfield being prior in time, would have the prior right. On the other hand, the case last cited is certainly overruled in England by the lord chancellor in the carefully-considered cases of *Dearle* v. *Hall* and *Loveridge* v. *Cooper*, 3 Russ. 1, 57, 58; and the principle of these cases has been repeatedly adopted and approved by the supreme court, as shown by the cases of *Judson* v. *Corcoran*, 17 How. 612, 615; by MARSHALL, C. J., in *Hopkirk* v. *Page*, 2 Brock. 20, 41; in *Spain* v. *Hamilton's Adm'r*, 1 Wall. 604; and *Nat. Bank* v. *Texas*, 20 Wall. 72, 89.

In *Judson* v. *Corcoran*, supra, the court say:

"There may be cases in which a purchaser, by sustaining the character of a *bona fide* assignee, will be in a better situation than the person was of whom he bought; as, for instance, where the purchaser, who alone had made inquiry and given notice to the debtor, or to a trustee holding the fund, (as in this instance,) would be preferred over the prior purchaser who neglected to give notice of his assignment and warn others not to buy."

In *Loveridge* v. *Cooper*, 3 Russ. 58, the lord chancellor says:

"Where personal property is assigned, delivery is necessary to complete the transaction, not as between the vendor and the vendee. but as to third, persons, in order that they may not be deceived by apparent possession and ownership remaining in a person who, in fact, is not the owner. This doctrine is not confined to chattels in possession, but extends to choses in action, bonds, etc. In *Ryall* v. *Rolles*, 1 Ves. Sr. 348, it is expressly applied to bonds, simple contract debts, and other choses in action. In cases like the present, the act of giving the trustee notice, is, in a certain degree, taking possession of the fund; it is going as far towards equitable possession as it is possible to go; for, after notice given, the trustee of the fund becomes a trustee for the assignee who has given him notice."

The principle of all these latter cases is that the first purchaser of the chose in action, who neglects to give notice to the debtor, or trustee holding the fund, and does not take possession of the evidences of the debt, acquires but an imperfect title as respects third persons, and by his laches is, in a sense, a contributory party to the fraud perpetrated by his vendor in the subsequent sale to another purchaser of the same debt or fund; and where the latter has used all due diligence by inquiry and notice, the equity of the latter is to be preferred over that of the former. 1 Dan. Neg. Inst. § 748a. Many of the authorities upon this general subject are reviewed in the opinion of the court, in *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 325.

The equities of Hatch & Sons in this case are plainly superior, through the laches of the first assignee, and an order should. therefore, be entered for the payment of the dividend to them.