In re LETERMAN, BECHER & CO., Inc.

(Circuit Court of Appeals, Second Circuit. May 28, 1919.)

No. 187.

1. BANKRUPTCY ⬤⟜440—ORDER AS TO PRIORITY OF CLAIM APPEALABLE AS "CONTROVERSY IN BANKRUPTCY PROCEEDING."

An order allowing priority to one allowed claim over another allowed claim is not an order in a bankruptcy proceeding proper, reviewable by petition to revise under Bankruptcy Act, § 24b (Comp. St. § 9608), but is an order made in a controversy in a bankruptcy proceeding, and as such subject to the appellate jurisdiction of the Circuit Court of Appeals under section 24a, authorizing appeal in such a case.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Controversy Arising in Bankruptcy Proceedings.]

2. FRAUDULENT CONVEYANCES ⬤⟜145—RETENTION OF POSSESSION AS AGENT OF CHOSE IN ACTION ASSIGNED NOT FRAUDULENT.

An assignment of accounts is not invalidated because they are left in possession of the assignor for collection, as agent of the assignee.

3. COURTS ⬤⟜372(1)—FEDERAL COURTS NOT BOUND BY STATE DECISIONS AS TO PRIORITY BETWEEN ASSIGNEES.

The question which of two assignees of the same thing from the same assignor is entitled to priority is one of general law, on which the federal courts are not bound by state decisions.

4. ASSIGNMENTS ⬤⟜85—ASSIGNEE FIRST GIVING NOTICE TO DEBTOR PRIOR IN RIGHT.

Under the rule of the federal courts, as between two assignees of a chose in action from the same person, the one who first gives notice to the debtor of his assignment has the better right.

5. NOTICE ⬤⟜14—ACTUAL NOTICE PROVABLE BY ALL DEGREES OF EVIDENCE.

Actual notice is a fact to prove which all grades and degrees of evidence may be used, from the most direct and positive proof to the slightest circumstances from which a jury would be warranted in inferring notice.

6. NOTICE ⬤⟜1—MUST BE ACTUAL WHERE NO STATUTE AUTHORIZES CONSTRUCTIVE NOTICE.

Notice being necessary, that notice must be actual, in the absence of a statute providing for constructive notice.

⬤⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. **EVIDENCE** ⊛71—**NOTICE** ⊛10—**PRESUMPTION OF RECEIPT OF, NOTICE SENT BY MAIL.**

In the absence of a statute authorizing service of a notice by mail a notice·so served is ineffective, unless it is received; but where it has been properly mailed its receipt will be presumed, in the absence of evidence to the contrary.

8. **ASSIGNMENTS** ⊛57—**NOTICE SENT BY MAIL TAKES EFFECT WHERE RECEIVED.**

Notice of an assignment deposited in the mail by an assignee does not become effective as against the holder of the fund assigned or the debtor until it is actually communicated to him.

9. **ASSIGNMENTS** ⊛137—**RECEIPT OF UNREGISTERED LETTER BEFORE REGISTERED ONE ESTABLISHED.**

Where two assignees of the same choses in action each sent notices of his assignment to the debtors by mail at about the same time, one by registered and the other by unregistered mail, the unregistered notices *held* under the evidence to have been first received.

Petition to Revise and Appeal from Order of the District Court of the United States for the Southern District of New York.

In the matter of Leterman, Becher & Co., Incorporated, bankrupt. From an order awarding priority to the claim of Coleman & Co., the Tawas Company, Incorporated, appeals. Reversed.

Certiorari denied 250 U. S. 668, 40 Sup. Ct. 14, 64 L. Ed. ——.

Gettner, Simon, & Asher, of New York City (Herman Asher, of New York City, of counsel), for appellant.

J. S. Rosenthal and Jacob J. Lesser, both of New York City, for appellees.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. [1] The order which is brought here for our consideration is not an order in a bankruptcy proceeding proper, as the claims of the two petitioners against the bankrupt have been allowed. But this is a controversy between two claimants as to the priority of their respective claims, which is the only question involved. It is therefore a controversy in a bankruptcy proceeding, and as such is subject to the appellate jurisdiction of this court under section 24a of the Bankruptcy Law (Act July 1, 1898, c. 541, 30 Stat. 553 [Comp. St. § 9608]). The petition to revise which under section 24b gives a right to review as to matters of law where facts are not in controversy will be disregarded. In· re Doran, 154 Fed. 467, 83 C. C. A. 265.

This controversy arises out of the failure of an assignee of choses in action to give notice to the debtors at the time of the assignment. The result is that a subsequent assignee who claims to have first given notice is seeking priority of payment out of the proceeds of assigned choses in action now in the hands of the trustee of the bankrupt assignor.

It appears that Coleman & Co. were engaged in business as commercial bankers and factors, and that on October 15, 1915, they entered into an agreement with the bankrupt, which it is alleged has ever since continued in force, whereby Coleman & Co. were to acquire certain accounts receivable of the said bankrupt by advancing thereon 80 per

cent. of the net face value subject to a commission charge of 1¼ per cent., plus 6 per cent. interest on sums advanced until paid. At the time of the hearing there was owing to Coleman & Co. the sum of $9,314.48, for which they had held accounts receivable having a face value of $11,720.74.

The contract between Coleman & Co. and the bankrupt contained the following clauses among others:

"The company [Coleman & Co.] shall have a general banker's lien on all moneys, property, or other collateral in its possession or under its control for any and all indebtedness from the customer [Leterman, Becher & Co.] to the company. The word 'debtor' in this agreement refers to the customers of the customer mentioned in the assigned accounts.

"The title to all merchandise which any debtor may not receive or return or refuse to accept is in the company. Should the customer have any merchandise returned to it, or not accepted on any account assigned to the company, or should information be received by the customer of such return or non-acceptance, the customer shall immediately give notice to the company, and the company shall thereupon have the option either to retain its title to the merchandise so returned or not accepted, or to surrender the same to the customer upon receiving payment therefor in cash or receive possession of such merchandise.

"This agreement shall be construed according to the law of the state of New York."

In November and December, 1917, the Tawas Company advanced to the bankrupt $2,750 in three installments, for which they received the promissory notes of the bankrupt. At the time the Tawas Company made these advances the bankrupt assigned to it various accounts receivable, all of which accounts had been previously assigned to Coleman & Co. But at the time of the assignment of these accounts the Tawas Company had no information or knowledge of the previous assignment of the accounts to Coleman & Co., and it at that time was given an affidavit by the bankrupt, for the purpose of inducing the loans, in which it was recited that the bankrupt was then in a solvent condition and was the sole owner of the accounts, and that the same had not been assigned or transferred.

No notice of the assignment of the accounts was given to the debtors of the bankrupt at the time of the respective assignments by either Coleman & Co. or the Tawas Company. But a few days before the bankruptcy and on January 11, 1918, Coleman & Co. sent letters of notification to all the debtors, informing them that the accounts had been assigned to Coleman & Co. and were payable only to them. The Tawas Company on the same day also sent notices of the assignment and that payment should be made to them.

The finding of the referee as to the facts concerning these notices was as follows:

"The evidence showed that Coleman & Co.'s [notices] went by registered letters calling for receipts of the addressees. These letters were mailed at the Madison Square branch post office on January 11, 1918, 'not later than 8 p. m.' The exact hour when they were mailed was not shown. After the letters were delivered to the post office, they were entered on 'descriptive sheets.' Receipts were made out for each letter; that each letter was numbered and postmarked, and then entered on bills to dispatch them to the terminal.

"The Coleman registered letters were dispatched at 1:10 a. m. January 12, 1918; that is, at that hour they were sent to the Pennsylvania Railroad ter-

minal to be sent forward by trains carrying registered mail. All mail trains do not carry registered mail. Mail not registered goes by any mail train, and there are more mail trains carrying mail not registered than there are trains carrying registered mail. Registered mail calling for receipts must be delivered to the addressee, or to some one usually receiving the mail for the addressee, and the person to whom the registered mail is delivered must sign a receipt therefor. Mail not registered may be left in a letter box, or at the address of the addressee, and no receipt is taken therefor. In the ordinary course of business a registered letter is not delivered as promptly as an unregistered letter.

"The Tawas notices were put in envelopes, duly addressed, postage prepaid, and deposited in the 116th Street branch post office, Manhattan borough, at 6 p. m. on January 11, 1918. The envelopes had printed on the outside 'Gettner, Simon & Asher, 299 Broadway.' None of these letters came back. The Tawas letters were not registered. Unregistered letters for the South and extreme West dropped into the post office in the afternoon go earlier than midnight of that day. There is a mail from New York to the south at about 10:30 p. m. * * *

"The fair inference from the testimony of McEachron, an employé of the New York post office for 24 years, is that the unregistered letters containing notices to debtors mailed by the Tawas Company at the 116th Street branch post office on January 11, 1918, at 6 p. m., were received by the debtors in due course of the mails before the notice mailed by Coleman & Co. at the Madison Square branch post office on January 11, 1918, at an unascertained hour, but not dispatched from that office until 1:10 a. m. January 12, 1918."

His conclusion of law was that the proceeds of the accounts assigned to the Tawas Company should be first applied to the satisfaction of the claim of the Tawas Company, and that the balance so far as required should be applied to the payment of the claim of Coleman & Co. The District Judge reversed the referee. In his opinion he said:

"Nothing more can be called proven than that both these claimants gave notice on the same day, and the day is not split up or divided into fragments by any persuasive evidence. It follows that both stand on exactly the same bottom, except as to priority in time of assignment, and there Coleman has the advantage, and the fund is awarded to him, reversing the finding of the referee."

[2] The accounts assigned apparently were not delivered by the bankrupt either to Coleman & Co. or to the Tawas Company. The intention evidently was that the bankrupt should collect the assigned accounts as agent for the assignee, and as collected from time to time pay over to the assignee the amounts collected, either at the time of collection or when demanded. As between assignor and assignee and the creditors of the assignor, the validity of the assignment is not affected by the fact that the accounts to be collected were allowed to remain in the assignor's possession. It has been held that the Personal Property Law of New York (Consol. Laws, c. 41), declaring sales or mortgages of goods and chattels not followed by an actual and continued change of possession presumptively fraudulent and void as against creditors, does not relate to choses in action. Booth v. Kehoe, 71 N. Y. 341; Young v. Upson (C. C.) 115 Fed. 192. And the Supreme Court of the United States has held it not unlawful to allow the accounts to remain in the possession of the assignor for collection. In making the collection he acts in a fiduciary capacity, and the money, when collected, becomes the specific property of the assignee or pledgee. Clark v. Iselin, 21 Wall. 360, 368, 22 L. Ed. 568.

[3, 4] In Methven v. Staten Island, 66 Fed. 113, 13 C. C. A. 362, this court had before it the question whether an assignee who first gives notice to the debtor has the prior right though the assignment to him is later in date than that to the other assignee. The court held that as between two assignees the one who first gives notice has the better right. In so deciding this court declared that the question is one of general jurisprudence and that the decisions of the highest court of the state are not controlling. We adhere to that ruling in this case. The clause found in the agreement between Coleman & Co. and the bankrupt, that "this agreement shall be construed according to the law of the state of New York," if binding as between assignor and assignee, is not binding as against a subsequent assignee, who was not a party to it. It is not decisive in this court of the question now presented that the courts of the state of New York have laid down the rule that, as between different assignees of a chose in action by express assignment from the same person, the one prior in point of time will be protected, although he has given no notice of such assignment to either the subsequent assignee or the debtor. Fortunato v. Patten, 147 N. Y. 277, 283, 41 N. E. 572. In this respect the rule in New York differs from the rule in the federal courts, and from that which prevails in England and in the courts in many of the states.

The leading case on this subject is the well-known case of Dearle v. Hall, 3 Rus. 1, which held that a third assignee who had given notice was entitled to priority over a first and second assignee who did not give notice. That case and the cases which have followed it have gone upon the theory that personal property passes by delivery of possession, and that if one who acquires the right to take possession does not take it he is responsible for the consequences. A chose in action does not admit of tangible actual possession, but the assignee who gives notice to the legal holder of the fund does that which is tantamount to obtaining possession by placing the holder of the fund under an obligation to treat it as his property; and if he omits to give that notice he is guilty of the same neglect as he who leaves a personal chattel to which he has acquired a title in the actual possession and under the absolute control of another person. See Leading Cases in Equity, vol. 2, pt. 2, pp. 1581, 1582.

[5] Notice is a fact, the existence of which is to be established by evidence in the same manner as the existence of any other fact is established; and actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstances from which a jury would be warranted in inferring notice. Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 438, 12 Sup. Ct. 239, 35 L. Ed. 1063.

[6] Notice being necessary that notice must be actual in the absence of a statute providing means for constructive notice. In Burck v. Taylor, 152 U. S. 634, 654, 14 Sup. Ct. 696, 703 (38 L. Ed. 578), the court, in referring to the necessity of notice, said:

"If notice was essential to charge them, actual notice should have been given, at least in the absence of a statute providing some means for constructive notice."

The notice must be actual. Must it also be personal? In Beakes v. Da Cunha, 126 N. Y. 293, 297, 27 N. E. 251, the action was upon a guaranty, and the contract made it necessary to give notice on the 20th day of each month, if payment for the previous month had not been made. The court in construing this agreement said:

"Where any statute or the terms of any contract require notice to be given, and there is nothing in the context of the statute or the contract, or in the circumstances of the case, to show that any other notice was intended, a personal notice must always be given. But the context or the circumstances of the case may be such as to show that a personal notice was not intended, and in such a case a notice by mail, which is the ordinary mode of giving notices in business transactions, is authorized."

[7] In Rogers v. Burr, 105 Ga. 432, 446, 31 S. E. 438, 70 Am. St. Rep. 50, which was an action on contract the court held, actual notice being required, that the requirement was not met by simply mailing the notice to the defendants, where the defendants denied that they received the notice; it not being shown that the written notice was in fact received. And in Huntley v. Whittier, 105 Mass. 391, 7 Am. Rep. 536, the court held that in the absence of a statute authorizing the service of a notice by mail, a notice so served is ineffective unless it is received. But the courts hold that, where the notice has been properly mailed, its receipt will be presumed, in the absence of evidence to the contrary. Bickerdike v. Allen, 157 Ill. 95, 41 N. E. 740, 29 L. R. A. 782; Casco National Bank v. Shaw, 79 Me. 376, 10 Atl. 67, 1 Am. St. Rep. 319; Huntley v. Whittier, supra.

In the instant case the evidence shows that notices were mailed both by the Coleman Company and by the Tawas Company. There is no evidence that the notices so mailed were not received. On the contrary, there is affirmative evidence that the notices mailed by the Coleman Company were received; and there is evidence that the notices mailed by the Tawas Company were not returned. So that the conclusion is that the two claimants each gave proper notice to the debtors of the assignment.

[8] The court below stated that in his opinion the referee had committed error in that he had assumed that the priority of "giving notice" depended upon the order of time in which the notices of conflicting parties probably actually reached the person to be notified. The opinion of the court was that the party, whose duty it was to give the notices gave them, and completed them when it put the proper paper in the United States mail. We are unable to agree with that view of this case. The courts hold that, where acceptance by mail of an offer is expressly or impliedly authorized and the answer is duly posted, the acceptance is communicated, and the contract is completed from the moment the letter is mailed. Burton v. United States, 202 U. S. 344, 26 Sup. Ct. 688, 50 L. Ed. 1057, 6 Ann. Cas. 392. But they also hold that a letter revoking an offer is not effective until it is actually communicated to the referee. It is operative from the time it is received, and not from the time it is put into the mail. Patrick v. Bowman, 149 U. S. 411, 13 Sup. Ct. 811, 866, 37 L. Ed. 790. Whether a communication transmitted by mail is operative from the time it is mailed or from the time it is received clearly depends upon the nature of the

transaction. And we think it plain that a notice of an assignment deposited in the mail by an assignee does not become effective as against the holder of the fund assigned or the debtor until it is actually communicated to him. If that were not so, and the debtor or the trustee paid the assignor between the time of the mailing of the notice and the time of its receipt, he would be bound to pay twice, which, of course, cannot be the law.

[9] The question, then, is whether the notices Coleman & Co. sent, and which went forward as registered mail, reached the debtors before or after those sent by the Tawas Company, and which were deposited in the post office on the same day and were forwarded as unregistered mail. The evidence, if it is to be believed, shows that the Tawas Company deposited its notices at 6 p. m. All that appears as respects the hour of mailing of the notices of Coleman & Co., is that they must have been mailed some time prior to 8 p. m. The referee, who saw and heard the witness who testified that the notices sent by the Tawas Company were put into the post office at 6 p. m., believed him. The District Judge, who did not see or hear the witness, did not believe him, thinking him too exact and positive as to a matter which happened six months prior to the time of his giving the testimony. It is not incredible, as it seems to us, that the witness should have remembered the hour as well as the day on which he mailed notices of importance; and not having seen and heard the witness we are not disposed to accept his testimony as to the day and reject it as to the hour. The witness for Coleman & Co. remembered the day when he mailed the Coleman notices, but could not fix the hour. It is not, however, important to know the hour when the Coleman registered notices were mailed, for it definitely appears that all mail trains do not carry registered mail, and that there are more mail trains carrying mail not registered than there are trains carrying registered mail, and the authorities of the post office testified that the registered mail was not sent to the Pennsylvania Railroad Terminal to be sent forward by train until 1:10 a. m. of the next day. There was, therefore, not only a delay at the New York post office in dispatching the Coleman notices, but there was also delay at the offices to which the notices were sent, in the delivery of them to the parties for whom they were intended, after they reached their destination. In the ordinary course of business a registered letter is not delivered as promptly as an unregistered one. The inference is irresistible that the Tawas Company's notices were received by the debtors before those sent by Coleman & Co.

The order of the District Court is reversed.