## SALEM TRUST CO. v. MANUFACTURERS' FINANCE CO. et al.

(Circuit Court of Appeals, First Circuit.    April 11, 1922.)

### No. 1515.

1. **Removal of causes ⬢⟿30—Citizenship of nominal party held not to defeat right of removal.**

Joinder of a defendant, which is a citizen of the same state as complainant, but is merely the depository of the fund in controversy between the other parties, without any interest therein, *held* not to defeat the right of removal by the principal defendant, which is a nonresident.

2. **Courts ⬢⟿372(1)—Federal courts not bound by state decisions as to priority between assignees.**

The question whether, as between two successive assignees of the same chose in action, the fact that the second first gave notice to the debtor gives him priority is one of general jurisprudence, on which the federal courts are not bound by the decisions of the courts of the state where the parties reside and the assignments were made.

3. **Assignments ⬢⟿85—First notice to debtor gives priority as between successive assignees of chose in action.**

Under the rule of the federal courts, as between two successive assignees of the same chose in action, the second prevails if he was the first to give notice to the debtor.

Brown, District Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by the Salem Trust Company against the Manufacturers' Finance Company and another. Decree for defendants, and complainant appeals. Affirmed.

Alexander Whiteside, of Boston, Mass. (Raymond P. Baldwin and Warren, Garfield, Whiteside & Lamson, all of Boston, Mass., on the brief), for appellant.

Robert G. Dodge, of Boston, Mass., for appellee Manufacturers' Finance Co.

Before BINGHAM and JOHNSON, Circuit Judges, and BROWN, District Judge.

BINGHAM, Circuit Judge. This is a bill in equity brought by the Salem Trust Company, a Massachusetts corporation, against the Manufacturers' Finance Company, a Delaware corporation, and the International Trust Company, a Massachusetts corporation, to establish the alleged right of the Salem Company as against the Finance Company to a sum deposited by the Finance Company with the International Trust Company.

The suit was originally brought in the superior court of Massachusetts, but was removed by the Finance Company to the District Court on the ground of diverse citizenship. After removal the plaintiff, the Salem Company, filed a motion to remand the cause, which was denied.

The case was then heard on agreed facts from which it appears that, on May 16, 1919, the Nelson Blower & Furnace Company assigned to the Salem Company the indebtedness, to the amount of $45,000, of the Murray & Tregurtha Corporation to it under a contract for the construction of certain marine engines; that, on July 15, and again on September 20, 1919, the Blower & Furnace Company assigned the same indebtedness to the defendant, the Finance Company, on the former date to the amount of $40,000 and on the latter $10,000; that all of the assignments were for a valid consideration; that on or about September 20, 1919, the defendant the Finance Company, having no knowledge of the assignment to the plaintiff, notified the Murray & Tregurtha Corporation of the assignment to it; that at that time the Murray & Tregurtha Corporation had no knowledge of the assignment to the plaintiff, and did not learn of it until later; that on September 26, 1919, the Blower & Furnace Company was placed in the hands of a receiver, who completed the contract with Murray & Tregurtha only on the understanding that his expenses should be paid in priority to the assignments; that on October 6, 1919, the plaintiff and defendant, having learned of the assignments, entered into an agreement reciting the facts as to the assignments; that the parties were in dispute as to their respective rights, and providing that the defendant should collect the account and deposit the proceeds in the International Trust Company in a special account in the defendant's name as trustee, and that if the parties could not agree upon the ownership of the proceeds, the question should be determined in some court of competent jurisdiction upon a proceeding brought by either party; that in pursuance of this agreement the defendant collected $8,634.10, which it deposited as agreed in the International Trust Company; that after deducting the cash expenses incurred in making such collection the amount on deposit was $7,963.36, the sum in dispute.

In the court below it was held that, inasmuch as the defendant was the first to give notice of its assignment to Murray & Tregurtha, it was entitled to the fund, even though its assignment was later in time to that of the plaintiff, and a decree was entered dismissing the bill.

It is from this decree that the present appeal is taken, and the assignments of error present two questions: (1) Did the District Court err in refusing to remand the cause? and (2) in ruling that, as between two successive bona fide assignees of the same chose in action, the second prevails, if he was the first to give notice to the debtor.

[1] The International Trust Company was not a necessary party defendant. It had no interest in the subject-matter litigated, but held the sum in dispute as the agent or depositary of the defendant, the Finance Company. By the sixth article of the contract the parties did not agree upon any particular court to determine the controversy between them, but left that question for determination by any court of competent jurisdiction, and, as the International Trust Company was at most a nominal party only, the motion to remand was rightly denied. Walden v. Skinner, 101 U. S. 577, 25 L. Ed. 963; Barney v. Latham, 103 U. S. 205, 26 L. Ed. 514; Bacon v. Rives, 106 U. S. 99, 1 Sup. Ct. 3, 27 L. Ed. 69; Ex parte Nebraska, 209 U. S. 436, 28 Sup. Ct. 581, 52 L. Ed. 876.

[2, 3] We are also of the opinion that the ruling of the court below, that the assignee who first gave notice had the prior right, though the assignment to him was later in date, was correct, and that the question decided is one of general jurisprudence as to which the decisions of the highest courts of a state are not controlling. Methven v. Staten Island Light & Power Co., 66 Fed. 113, 13 C. C. A. 362; and In re Leterman, Becher & Co., 260 Fed. 543, 171 C. C. A. 327, in which certiorari was denied October 20, 1919, by the Supreme Court, 250 U. S. 668, 40 Sup. Ct. 14, 63 L. Ed. 1198, under the name of Coleman & Co. v. Tawas Co. The ruling was in conformity with the well-established rule in the federal courts that the party who first gives notice of his assignment is to be regarded as having the greater equity. Judson v. Corcoran, 17 How. 612, 15 L. Ed. 231; Spain v. Hamilton's Administrator, 1 Wall. 604, 17 L. Ed. 619; Laclede Bank v. Schuler, 120 U. S. 511, 516, 7 Sup. Ct. 644, 30 L. Ed. 704; Methven v. Staten Island Light, Heat & Power Co., 66 Fed. 113, 13 C. C. A. 362; In re Leterman, Becher & Co., 260 Fed. 543, 171 C. C. A. 327; Farmers' & Merchants' Bank v. Farwell, 58 Fed. 633, 637–639, 7 C. C. A. 391; 5 C. J. pp. 953, 954, 955, § 135.

The law of Massachusetts relating to the assignment of choses in action is the same as that of New York and the facts in the cases cited from the Second circuit (66 Fed. 113, 13 C. C. A. 362, and 260 Fed. 543, 171 C. C. A. 327) differ in no material respect from those now before us, namely, the applicability of the state or the federal rule and the limitations of the latter. The questions presented are therefore the same as those that were before the court in the Second circuit, the decision of which the Supreme Court declined to review on certiorari. As these questions were definitely presented in the certiorari proceeding and were of general importance in that their decision by the Court

of Appeals in the Second Circuit involved a conclusion at variance with the law of New York as well as with that of many other states, the action of the Supreme Court in declining to review the decision is hardly conceivable unless it was satisfied the decision was right.

The decree of the District Court is affirmed, with costs to the Manufacturers' Finance Company, appellee, in this court.

BROWN, District Judge (dissenting). This case presents a question of priority of the rights of successive assignees of sums due or to become due upon a contract for the construction of marine engines. The debtor has discharged its obligation by payment, and by agreement of the assignees the fund is held until decision upon the conflicting claims of the two assignees.

It is conceded that under the law of Massachusetts the fund belongs to the Salem Trust Company, the first assignee. The Manufacturers' Finance Company, the second assignee, claims that the law of Massachusetts is inapplicable, and that the rights of the parties are to be decided upon what is called "the law of the federal courts" on a question of general jurisprudence.

Our first inquiry is whether the case is controlled by the law of Massachusetts.

The contract which created the debt was a Massachusetts contract, between two Massachusetts corporations. Under this contract the Murray & Tregurtha Corporation was to pay $2,500 each for 30 marine engines. The Nelson Blower Company was to construct the engines.

On May 16, 1919, the Nelson Company assigned the indebtedness due and to become due on said contract, to the amount of $45,000, to the Salem Trust Company, a Massachusetts corporation. If valid, this assignment covers the entire fund in controversy.

As these transactions were all between citizens of Massachusetts, the settled law of that state determined, as between them, the obligations and rights of the three parties—the debtor, the assignor, and the assignee. The Massachusetts decisions establish the rule that in the absence of estoppel the rights of a first assignee of a chose in action will prevail against the rights of a subsequent assignee, regardless of notice to the debtor or obligor. Thayer v. Daniels, 113 Mass. 129, 131; Putnam v. Story, 132 Mass. 205; Herman v. Conn. Mut. Life Ins. Co., 218 Mass. 181, 186, 105 N. E. 450, Ann. Cas. 1916A, 822; Rabinowitz v. People's National Bank, 235 Mass. 102, 104, 126 N. E. 289.

After the rights of these citizens of Massachusetts had become fixed under the law of that state, the assignor, the Nelson Company, on July 15, 1919, assigned the same indebtedness to the defendant Manufacturers' Finance Company, a corporation organized under the laws of Delaware, but having a usual place of business in Boston, Mass.

The different citizenship of the second assignee is not enough to avoid the conclusion that the second assignment, like the first, was a contract made and to be enforced in Massachusetts, and subject to the laws of that state.

The jurisdiction which a state possesses over property within its borders extends alike to tangible and intangible property. Pennington v. Fourth National Bank, 243 U. S. 269, 37 Sup. Ct. 282, 61 L. Ed.

713, L. R. A. 1917F, 1159. A vested right of action is property in the same sense in which tangible things are property. Pritchard v. Norton, 106 U. S. 124, 132, 1 Sup. Ct. 102, 27 L. Ed. 104.

"The laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement." Von Hoffman v. City of Quincy, 4 Wall. 535, 550 (18 L. Ed. 403); Brine v. Insurance Co., 96 U. S. 627, 634, 635, 637, 639, 24 L. Ed. 858; Halsbury's Laws of England, vol. 4, § 781, p. 366.

No reason is apparent why the second assignment is not subject to that rule, or why the law of Massachusetts relating to assignments of legal choses in action does not establish a rule of property. See 19 Yale Law Journal, 258, 260, 261.

Moreover, by a statute of Massachusetts (R. L. c. 173, § 4), the assignee of a legal chose in action assigned in writing has a legal right of action in his own name. He need not ask relief in equity against the debtor. This statute, unlike English statutes relating to the assignments of legal choses in action, does not require notice to the debtor. See Halsbury's Laws of Eng. vol. 4, p. 367, note (h).

The rule that authoritative state decisions rendered by a state court before the rights of the parties accrued and became fixed are presumed to be known to the parties, and form part of the contract, seems as applicable to written assignments of book accounts, or accounts receivable, as to conveyances or written instruments between private parties evidencing a transfer of real property or tangible personal property. As the state has like control over tangible and intangible property within its jurisdiction (Pennington v. Fourth Nat. Bank, 243 U. S. 269, 37 Sup. Ct. 282, 61 L. Ed. 713, L. R. A. 1917F, 1159), the rule seems equally applicable to tangible and intangible property (Kuhn v. Fairmont Coal Co., 215 U. S. 349, 370, 372, 30 Sup. Ct. 140, 54 L. Ed. 228).

Whether we adopt the theory that an assignment of a legal chose in action is a complete transfer of the assignor's legal right, or the theory that the assignee gets only an equitable title recognized by and enforceable in a court of law through an action in the name of the assignor or in his own name, it seems equally necessary to give effect to local decisions which have become rules of property.

It would seem sufficient for the purposes of this case to hold that the settled law of Massachusetts forms part of and controls these contracts of assignment. A foreign corporation, which is permitted to maintain a usual place of business in the state of Massachusetts for the transaction of local business, certainly has no right to preferential treatment as compared with resident citizens of Massachusetts, or to complain that it is subject to the same law. Horn Silver Mining Co. v. New York, 143 U. S. 305, 315, 12 Sup. Ct. 403, 36 L. Ed. 164; Shaffer v. Carter, 252 U. S. 37, 53, 40 Sup. Ct. 221, 64 L. Ed. 445. The consent of the state to its conduct of business therein of an intrastate character implies the condition that it shall assent to and be governed by the laws affecting the mode of transfer of property which govern its own citi-

zens. That the state has assented to the making of contracts by foreign corporations which shall become superior to those of its own citizens and prejudicial to their rights of property is not to be assumed. The different citizenship of the parties does not give to the contract an interstate character or create a right to question the local policy of a state in respect to the transfer of property, tangible or intangible. Pickens v. Merriam (C. C. A.) 274 Fed. 1, 7, 8.

If we adopt the view that under the Massachusetts decisions the Salem Trust Company, through an assignment in writing of a legal chose in action, acquired a statutory right of action in its own name, and that the assignor's legal right of action was transferred to the plaintiff, it follows, the assignor having parted with his interest by the first assignment, that the second assignee could take nothing. The second document of assignment was therefore as ineffective under the law of Massachusetts as any deed of property which the grantor did not own. In that view of the case we should conclude that there was, in substance, but one assignment—the first. There would then remain no question of "equitable priority" or of "equitable preference," as these terms are generally used. This question of priority arises between merely equitable interests, and not between an equitable interest and a legal title. Pomeroy's Eq. Jur. (3d Ed.) §§ 677, 679, 1277, 1273; Judson v. Corcoran, 17 How. 612, 614, 15 L. Ed. 231.

Upon the question whether a statutory provision authorizing an assignee to sue at law in his own name betters his position, and changes his right into a legal title, interest, or ownership, there seem to be contrary opinions. See Pomeroy's Eq. § 137; In re Westerton, 1919, 2 Chan. Div. L. R. 104; Williston on Contracts, vol. 1, §§ 435, 446a, 447; Marsh v. Garney, 69 N. H. 236, 45 Atl. 745.

Assuming, therefore, that, regardless of the Massachusetts statute and decisions that we have cited, we have a question of equitable preference, we may inquire whether the second assignee can establish his right to such preference.

The Manufacturers' Finance Company, the second assignee, rests its claim to equitable priority upon the fact that it was first to give notice of its assignment to the debtor, the Murray & Tregurtha Company. We are asked to accept and apply the following rule:

"Between two successive bona fide assignees of the same chose in action, the second will prevail, if he was first to give notice to the debtor."

It will be observed that this rule, as stated by Lord Macnaghten in Ward v. Duncombe, 1893, A. C. 369, 390, "gives the go-by to all considerations founded upon the conduct of the parties." This rule, which is commonly, and it seems erroneously, styled the rule of Dearle v. Hall, 3 Russ. 1, might more properly be called the rule of Foster v. Cockerell, 3 Cl. & F. 456. It was applied in that case between incumbrancers of an equitable interest in trust funds.

Both Dearle v. Hall and Foster v. Cockerell are critically examined by Lord Macnaghten in Ward v. Duncombe, who said of the rule declared in Foster v. Cockerell:

"Priority in such a case depends simply and solely upon priority of notice."

This shifting from a consideration of the conduct of both parties, and of the effect that the conduct of one might have had upon the other, to a consideration of the single question of priority of notice, was so radical a departure from the ordinary operations of the conscience of a chancellor as to evoke the remark from Lord Macnaghten that the court in Foster v. Cockerell "has gone perilously near legislating."

It is a general principle in courts of equity that, where both parties claim by equitable titles, the one who is prior in point of time is deemed the better in right. In protecting an innocent purchaser holding the legal title against one who has the prior equity, a court of equity can act only on the conscience of a party. If he has nothing that taints it, no demand can attach upon it so as to give any jurisdiction. Boone v. Chiles, 10 Pet. 177, 210, 9 L. Ed. 388. But the question of conscience is as important between equitable titles as between a legal and an equitable title. The doctrine of equitable estoppel and the principles of negligence involve a consideration of the effect of conduct, whether action or inaction, upon the conduct of others.

When we disregard the question whether the failure of the first assignee to give notice has in fact misled or prejudiced the second assignee, and the further question whether the conduct of the obligor has been affected by the fact that notice of the second assignment preceded notice of the first assignment, there seems to be left no question of conscience and no established principle of equity which requires the reversal of the ordinary rule that he who is prior in time is prior in right.

In this case the statement of agreed facts fails to show that the second assignee made inquiry of the debtor before making its loan and taking its assignment. There is nothing which shows that it relied upon any knowledge except that furnished by the assignor, or that the failure of the first assignee to give notice influenced its conduct or that of the debtor.

I am unable to agree that the case of Dearle v. Hall, when stripped of its consideration of the important fact that the second assignee had made inquiry of the trustee and found no incumbrance before he made his loan, relying upon an apparent title, has been approved by the Supreme Court of the United States, in the cases cited by the defendant.

Judson v. Corcoran, 17 How. 612, 615, 15 L. Ed. 231, in dicta upon which defendant relies, makes express reference to the element of inquiry by the second assignee:

"There may be cases in which a purchaser, by sustaining the character of a bona fide assignee, will be in a better situation than the person was of whom he bought; as, for instance, where the purchaser, who alone had made inquiry and given notice to the debtor, or to a trustee holding the fund, * * * would be preferred over the prior purchaser, who neglected to give notice of his assignment, and warn others not to buy.

"The cases of Dearle v. Hall and Loveridge v. Cooper * * * establish the doctrine to the foregoing effect in England."

In Spain v. Hamilton, 1 Wall. 604, 624, 17 L. Ed. 619, the junior transferees made inquiries. The defendant quotes from 1 Wall. 624:

"In order to perfect his title against the debtor it is indispensable that the assignee should immediately give notice of the assignment to the debtor, for otherwise a priority of right may be obtained by a subsequent assignee, or the debt may be discharged by a payment to the assignee before such notice."

This relates to perfecting title, not against a subsequent assignee, but against the debtor. The expression "for otherwise a priority of right may be obtained by a subsequent assignee" is wholly insufficient as an approval of a rule that he may obtain it merely by giving first notice after taking the assignment.

In Baker v. Wood, 157 U. S. 212, 215, 15 Sup. Ct. 577, 39 L. Ed. 677; Judson v. Corcoran is cited in support of the rule of estoppel.

"We know of no case holding that a man is estopped by silence as against the public, or any particular person with whom he has no fiduciary relation."

See Wiser v. Lawler, 189 U. S. 260, 272, 23 Sup. Ct. 624, 629 (47 L. Ed. 802). See, also, Greey v. Dockendorff, 231 U. S. 513, 516, 34 Sup. Ct. 166, 58 L. Ed. 339.

The discussion of Dearle v. Hall and of Foster v. Cockerell, 3 Cl. & Fin. 456, by the House of Lords, in Ward v. Duncombe, [1893] App. C. 369, should be read before extending the doctrine of those cases which relate to the assignments of equitable interests to a case relating to the assignment of legal choses of action in accordance with the statutory law of a state. Lord Macnaghten said (page 391):

"The learned counsel for the appellants invited your Lordships to define exactly the principle on which the doctrine of notice as established by the rule in Dearle v. Hall depends. Speaking for myself, I think that would be a very hard task. I am not sure that the doctrine rests upon any very satisfactory principle. I am not sure that it has not been established at the expense of principles at least as important as any of those to which it has been referred.

"The general principle applicable to all equitable titles is, I think, well expressed by Lord Cairns in Shropshire Union Railways & Canal Company v. The Queen, L. R. 7 E. & I. 506: 'A pre-existing equitable title,' said Lord Cairns, 'may be defeated by a supervening legal title obtained by transfer'— he was there speaking of an equitable title to shares. Then he goes on: 'And I agree with what has been contended, that it may also be defeated by conduct, by representations, by misstatements of a character which would operate and enure to forfeit and to take away the pre-existing equitable title. But I conceive it to be clear and undoubted law, and law the enforcement of which is required for the safety of mankind, that in order to take away any pre-existing admitted equitable title, that which is relied upon for such a purpose must be shewn and proved by those upon whom the burden to shew and prove it lies, and that it must amount to something tangible and distinct, something which can have the grave and strong effect to accomplish the purpose for which it is said to have been produced.'

"In defense of the rule in Dearle v. Hall, it has been said that notice is necessary in order to 'perfect' the title of the assignee—in order to 'complete' his title. Those expressions have frequently been used; but they are, I venture to think, little more than mere phrases. Notice does not render the title perfect. Notice was not even a step in the title until it was made so by the decision in Foster v. Cockerell. * * *

"Much of the reasoning in Dearle v. Hall is founded upon Ryall v. Rowels, 1 Ves. 348. Indeed, as observed by Wigram, V. C., in Wilmot v. Pike, 5 Hare, at page 19, it is impossible to read Sir Thomas Plumer's very elaborate judgment without seeing that his opinion as to the mode of transferring equitable interests in property not capable of actual delivery, 'was borrowed entirely from the decisions in bankruptcy as to the acts which were necessary

under the statute to take a chose in action out of the order and deposition of a bankrupt.' The doctrine of reputed ownership is entirely the creature of statute, and applicable by statute in cases of bankruptcy only. I cannot help thinking that, in extending the doctrine to cases of equitable assignment of personal property where there is no bankruptcy (which is practically what was done in Foster v. Cockerell), the court has gone perilously near legislating. The inconvenience of such a course is obvious, and the result has been singular. The law relating to reputed ownership in bankruptcy has been altered from time to time. When Dearle v. Hall was decided, it extended to all choses in action. Now it does not apply to choses in action at all, except to 'debts due, or growing due, to the bankrupt in the course of his trade or business.' But the rule in Dearle v. Hall founded in great measure on the bankruptcy law as it existed sixty years ago, remains unaltered, and it is beyond the power of any court to alter it.

"I am inclined to think that the rule in Dearle v. Hall has on the whole produced at least as much injustice as it has prevented. It was argued in Dearle v. Hall that notice to the trustees necessarily prevents fraud on the part of the assignor. 'The trustees,' said Mr. Sugden, 'are converted into a register, and by applying to them every one who proposes to negotiate for the purchase of the fund, except in the very improbable event of the trustees incurring personal responsibility by lending themselves to the vendor's dishonest purposes, is enabled to ascertain whether any prior incumbrances exist which will prevail over the title that is to be conveyed to him.' That argument was in substance adopted by the court."

In Lloyd's Bank v. Pearson, [1901] 1 C. D. 865, at page 872, Cozens-Hardy, J., said:

"I have carefully read Lord Macnaghten's judgment in Ward v. Duncombe, which I accept as a guide, but I do not profess to be able to discover any definite principle upon which the rule in Dearle v. Hall is founded. Nevertheless it must now be recognized as a positive rule, though it is not one to be extended."

In 1 Ames' Cases on Trusts, p. 326, is a note on Dearle v. Hall, and on page 327 a quotation from Meux v. Bell, 1 Hare, 73, in which an attempt was made to answer the objection that, if no inquiry is made, the puisne incumbrancer has not in point of fact been deceived or injured by the neglect of the prior incumbrancer. The answer seems to be that the second incumbrancer's notice has the effect of inquiry, and, if he is not told when he gives his notice that there is a prior incumbrance, he thenceforward relies, and may be injured by reliance after his notice.

In the present case, however, though the second assignee took its assignment on July 15, 1919, it gave no notice until on or about September 20, 1919, six days before the assignor, the Nelson Company, was placed in the hands of a receiver. Reliance during this period cannot take the place of reliance at the time of parting with its money, as a ground for estopping the first assignee by reason of its negligence.

That inquiry by the second assignee before making his loan would have disclosed nothing affords no reason for excusing inquiry. It is true that we cannot apply the rule that he who fails to make inquiry is bound by what inquiry would have disclosed. But we may apply the rule that there can be no estoppel of the first assignee without reliance by the second assignee, and that negligence of the first, which did not affect the conduct of the second, or of the debtor, has no more weight in equity than at law. In considering whether there was negli-

gence, we must consider the rule of diligence established by the state statute. Apparent ownership or reputed ownership does not mean a grantor's assertion of ownership. Ownership of the assignor is not otherwise apparent in a transaction like this until inquiry is made and no prior assignment found. Before that reliance is solely upon the word of the assignor.

The defendant relies especially upon decisions in the Second circuit, which it must be admitted approve its contention.

In the earlier case of In re Gillespie (D. C.) 15 Fed. 734, not cited by defendant, Judge Addison Brown qualifies the rule by the phrase:

"And where the latter has used all due diligence by inquiry and notice, the equity of the latter is to be preferred over that of the former."

In the case of Methven v. Staten Island Co., 66 Fed. 113, 13 C. C. A. 362, the second assignee seems to have perfected his title by acceptance of the debtor. The recent case of In re Leterman, Becher & Co., 260 Fed. 543, 171 C. C. A. 327, however, drops all qualification from the rule and rests the decision squarely upon priority of notice. I find myself unable to agree with the decision of that court, though I have given it most careful consideration.

It is also held, but without discussion of the question, that the rights of successive assignees of the same fund presents a question of "general jurisprudence." This was first held by the Circuit Court of Appeals of the Second Circuit in Methven v. Staten Island Light, Heat & Power Co., 66 Fed. 113, 13 C. C. A. 362, and was followed in In re Leterman, Becher Co., Inc., 260 Fed. 543, 547, 171 C. C. A. 327. In the latter case it was said that an assignee of a chose of action who omits to give notice is guilty of the same neglect as he who leaves a personal chattel, to which he has assumed title, in the actual possession and under the absolute control of another person.

But it should be observed that this question as concerns chattels has repeatedly been held to be a matter of local law in cases relating to conditional sales and chattel mortgages. Etheridge v. Sperry, 139 U. S. 266, 11 Sup. Ct. 565, 35 L. Ed. 171; Thompson v. Fairbanks, 196 U. S. 516, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91, 25 Sup. Ct. 567, 49 L. Ed. 956; York Mfg. Co. v. Cassell, 201 U. S. 344, 26 Sup. Ct. 481, 50 L. Ed. 782; Bryant v. Swofford Bros., 214 U. S. 279, 29 Sup. Ct. 614, 53 L. Ed. 997.

It is impossible to rely upon analogy to a fixed legal rule concerning reputed or apparent ownership of chattels, since the laws of the states differ widely on this subject. The courts of the United States have applied the rule that an assignee of a legal right of action, who may have a remedy in a suit at law in the assignee's name, has no right to equitable relief. Glenn v. Marbury, 145 U. S. 499, 508, 509, 12 Sup. Ct. 914, 36 L. Ed. 790.

Assignments of legal choses in action are in a different class from assignments of strictly equitable interests. The security acquired by the assignee is to be made effective through action at law. To establish by statute or by decisions of its courts legal rules which shall regulate a transfer of such a right seems beyond question within the power of a

state. Whether assignments shall be recorded in a registry, or what other steps shall be taken to perfect the transfer of A.'s legal right to B., is as truly a matter of local policy as are like questions concerning conditional sales of chattels.

If an assignment in writing delivered to the assignee is deemed sufficient, a court of the United States should not attempt to prescribe for the states a general rule of public policy which imposes conditions additional to or contrary to those prescribed by the laws of the state.

Can we say that the first assignment, wholly a Massachusetts contract, is not effective to pass to the assignee all the right which the assignor had at the time of assignment, because he did not notify the debtor, when by the law of the state it has been decided that he need not do so? Is he to be held negligent in failing to do what the law of the state holds he need not do? Is a citizen of Delaware doing business in Boston entitled to say that, though the first assignee has a perfect title against all citizens of Massachusetts, he has not such title against a citizen of Delaware? Is a debtor receiving notices from both before payment to be under an obligation in the state courts to pay the first assignee, and also under an obligation under federal law to pay the second assignee?

In order to do complete justice to all the parties, it seems necessary to provide for reimbursement of one of them by the assignor who has been paid twice. If the second assignee, who has been fraudulently induced to rely upon the assignor's statement, may, by giving notice, shift the consequences of this fraud to the shoulders of the first assignee in a federal court of equity, that court must be able to afford him a remedy against the assignor.

The consequences that may follow from adopting in the federal courts one general rule—the general rule that priority of notice gives priority of right—must not be ignored. As there are many states which, like Massachusetts, New York, and New Hampshire, reject the rule (see, also, 1 Ames' Cases on Trusts, 326, 327), it will override the laws of many states, unsettle rights under the laws of those states, and thus infringe the rule that the federal courts administer the laws of the state, and this, not upon a question of conscience, but upon a rule of policy which "gives the go-by to all considerations founded upon the conduct of the parties." Ward v. Duncombe, [1893] A. C. 369, 390. In Massachusetts or New York a second assignee might recover from the assignor on the ground of fraud or failure of consideration. The first assignee can, of course, have no right of recovery, since he has not been defrauded, he was not deceived, and the subsequent assignment was not in fraud of his right, since it did not deprive him of anything.

The assignor has been paid twice for the fund that he has assigned. The first assignee cannot in the state court recover his money from the assignor, because under the law of the state he received full consideration. The second assignee cannot in the federal court recover his money, because under the rule of "general jurisprudence" he received full consideration. The first assignee loses his right to the fund by the act of the second assignee, in giving notice which creates in him a

right by converting an assignment worthless under the law of the state into an assignment valid in a federal court of equity. The first assignee is thus penalized by a court of equity for a neglect which has not had the least effect upon the conduct of the second assignee.

It is not the function of a court of equity to punish negligence in the abstract; nor should a court of equity create a law of notice which circumvents the established rules of estoppel and negligence.

The confusion introduced in the English courts of a single jurisdiction by splitting the decision in Dearle v. Hall into two distinct parts—one the question of equitable estoppel by negligence; the other the question of superior diligence in giving notice to the debtor—is apparent from reading the case of Ward v. Duncombe. The confusion that will result from incorporating this rule of notice in the single system of equity administered by the federal courts, while dealing with transactions arising under the laws of many independent jurisdictions, is a sufficient practical reason for rejecting the rule. If in England the rule, as Lord Macnaghten has said, "has on the whole produced at least as much injustice as it has prevented," we should not adopt it as a fundamental rule of equity. It is not a rule of conscience, but at best a rule of doubtful and disputed policy as to the mode of transfer of substantial rights.

It is said notice must be given to protect third persons against fraud; but third persons who make no inquiry are not so protected, even if notice is given the debtor. It is inquiry of the debtor, and reliance upon the result of inquiry, a title apparently unincumbered, that may create an equity. Notice alone cannot create a right. A rule that requires notice but excuses inquiry is not a consistent rule of equity. A duty to give notice implies a duty to inquire. Halsbury's Law of Eng. vol. 4, § 821. Equity may require one to pay for the consequences of his negligence, but should not penalize negligence, when, as matter of fact, it did no harm.

Taking the decision in Dearle v. Hall as a whole, coupling together inquiry, reliance and notice, we have the rule as stated in Somerset v. Cox, 33 Beav. 634, 639:

"By means of it money may safely be lent on security of trust funds on ascertaining that the trustee has no notice of any prior incumbrance."

As an exception to the general rule that he who is prior in time is prior in right, this seems to be a reasonable rule, that can be administered without contradiction of the established principles of estoppel and laches. We are not required by the decisions of the Supreme Court to go further.

The further exception from that general rule of cases where the second assignee is prior merely in giving notice ex post facto is not supported by substantial reasons.

If it can be said that there is such a general probability of fraudulent action by an assignor as requires an assignee to take steps for the protection of third parties, in itself a doubtful proposition, it must also be said that this probability should equally call for an inquiry by an assignee for his own protection. It is not enough for him to inquire or give notice after he has expended his money. He cannot mend his

own neglect and protect himself by charging another with failure to protect him by giving notice which would not have warned him except on inquiry.

That the rule applied in Leterman, Becher Co., Inc., 260 Fed. 543, 549, 171 C. C. A. 327, is an arbitrary verbal formula, not based upon equitable principles, is illustrated by the decision on the facts of that case. The rights of assignees who dispatched notices by mail on the same day were determined by the comparative speed of a registered and an unregistered letter of notice in the mail. The first assignee, who took the reasonable precaution of registering his letter of notice, thereby made it slower and lost in the race. The clock created the superior equity.

The fact that the Supreme Court in Coleman & Co. v. Tawas Co., 250 U. S. 668, 40 Sup. Ct. 14, 63 L. Ed. 1198, denied certiorari in In re Leterman, Becher & Co., 260 Fed. 543, 171 C. C. A. 327, adds nothing to the authority of the case in the lower court. See Hamilton-Brown Shoe Co. v. Wolf Bros., 240 U. S. 251, 257, 258, 36 Sup. Ct. 269, 60 L. Ed. 629.

Time is of the essence, or not of the essence, according to circumstances. When, as in this case, both notices reached the debtor long before the completion of the work, and long before the date of payment, and where the money was paid over upon the joint request of both, the time of the second assignee's notification seems wholly insignificant and unsubstantial.

As either assignment would exhaust the fund in controversy, it seems unnecessary, on the agreed facts, to discuss the difference between total and partial assignments, or between unconditional assignments and those made by way of mortgage or hypothecation. It is settled law that the legal effect of a transaction involving pledge or hypothecation depends upon the local law. Dale v. Pattison, 234 U. S. 399, 34 Sup. Ct. 785, 58 L. Ed. 1370, 52 L. R. A. (N. S.) 754; Taney v. Penn Bank, 232 U. S. 174, 34 Sup. Ct. 288, 58 L. Ed. 558.

I am of the opinion that we should give effect to the rights of the plaintiff appellant under the law of Massachusetts. I am also of the opinion that the defendant appellee has not established upon accepted principles of equitable jurisprudence a right to an equitable preference over the prior assignee.