Mark S. ROSE and Frederic G. Rose,
Plaintiffs–Appellants,

v.

AMSOUTH BANK OF FLORIDA,
Defendant–Appellee.

Docket No. 04–0389–CV.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 2, 2004.

Decided: Dec. 1, 2004.

Donald R. Hamill (William R. Garbarino, of counsel), Law Office of William R. Garbarino, Sayville, NY, for Plaintiffs–Appellants.

Robert J. Ansell (Jay S. Hellman, of counsel), Silverman Perlstein & Acampora LLP, Jericho, NY, for Defendant–Appellee.

Before: CARDAMONE, CABRANES, and SOTOMAYOR, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

In this diversity action, plaintiffs Mark S. Rose and Frederic G. Rose (the "Roses") appeal from the December 17, 2003 judgment of the District Court finding the Roses' 1986 assignment of a life insurance policy subordinate to defendant AmSouth Bank's ("AmSouth") 1997 assignment of the same policy. Though the District Court found that plaintiffs had a valid assignment under New York law, the Court concluded that plaintiffs were estopped from establishing priority over AmSouth's second-in-time assignment because it found that plaintiffs had "totally failed to protect their assignment." *Rose v. Amsouth Bank of Fl.*, 296 F.Supp.2d 383, 393–95 (E.D.N.Y.2003). Defendant, however, did not produce sufficient evidence at trial to support an estoppel defense. Because the District Court correctly found that plaintiffs' assignment was valid, and defendant raised no defense that would justify subordinating plaintiffs' otherwise valid assignment under New York law, we reverse the judgment of the District Court and remand the cause for an entry of judgment in favor of plaintiffs and an award of appropriate damages.

## BACKGROUND

The present case arises out of conflicting assignments of a life insurance policy issued by Fidelity Mutual Life Insurance Company ("Fidelity"). The Roses obtained their assignment first, on May 19, 1986, in conjunction with an agreement to make certain premium payments on behalf of the insured pursuant to a "Split Dollar Agreement." *Rose*, 296 F.Supp.2d at 389. Nearly eleven years later, unbeknownst to the Roses, AmSouth procured an interest in the same policy, obtaining two assignments, one dated January 29, 1997, and the second dated January 31, 1997, as collateral for a loan AmSouth issued to the insured. *Id.* at 387.

When the insured died on March 21, 1999, counsel for the Roses sent Fidelity a copy of the March 19, 1986 assignment and Split Dollar Agreement and demanded payment. *Id.* at 387–88. On April 5, 1999, Fidelity declined to honor the Roses' assignment.[1] *Id.* AmSouth sent Fidelity a claim letter on October 20, 1999, and Fidelity paid AmSouth the entire net proceeds of the policy. *Id.* at 393. The Roses demanded payment from AmSouth. AmSouth refused, and the Roses sued both Fidelity and AmSouth.

Because Fidelity was then undergoing bankruptcy proceedings in Pennsylvania, the District Court dismissed plaintiffs' complaint against Fidelity,[2] and plaintiffs continued their action solely against defen-

---

1. In its letter denying the Roses' claim, Fidelity stated that it had received information that the Split Dollar Agreement was no longer operative. But it is not clear why Fidelity concluded that the validity of the Roses' assignment hinged on the operativeness of the Agreement. The fact that the Roses had stopped making payments under the Agreement in 1993 should not have affected the Roses' entitlement to the payments they had already made.

2. The Commonwealth Court of Pennsylvania established a separate process for the adjudication of claims against Fidelity, and the District Court found that plaintiffs should pursue their claim against Fidelity in those proceedings. *Rose*, 296 F.Supp.2d at 387; *see also Rose v. Fidelity Mut. Life Ins. Co.*, 207 F.Supp.2d 50, 53–54 (E.D.N.Y.2002).

dant. After a bench trial, the District Court found that plaintiffs were not entitled to recover their assigned portion of the insurance proceeds from AmSouth. *Id.* at 400. On appeal, plaintiffs argue (1) that defendant did not raise the affirmative defense of estoppel in the pleadings and consequently waived the defense, and (2) that the District Court erred in subordinating plaintiffs' valid prior assignment to defendant's subsequent assignment.

## DISCUSSION

■ On appeal from a bench trial, we review the District Court's factual findings for clear error and its conclusions of law *de novo.* Mixed questions of law and fact are also reviewed *de novo.* *See, e.g., Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 193 (2d Cir.2003).

### I. Unpleaded Affirmative Defenses

Federal Rule of Civil Procedure 8(c) requires parties to raise affirmative defenses, such as estoppel and laches, in the pleadings.[3] Notwithstanding that requirement, failure to plead an affirmative defense does not necessarily result in waiver. We have recognized that "waiver [of an unpleaded defense] may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party." *Am. Fed. Group, Ltd. v. Rothenberg,* 136 F.3d 897, 910 (2d Cir.1998). Thus, "a district court may ... entertain [unpleaded] affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.,* 316 F.3d 337, 350 (2d Cir.2003).

■ AmSouth first asserted its estoppel defense at the summary judgment stage of this litigation. At that time, the Roses had an opportunity to respond substantively to the defense. They also had the opportunity to object to AmSouth's failure to raise estoppel formally in the pleadings. The Roses did not object. Nor do they argue on appeal that they were prejudiced by AmSouth's procedural error. Consequently, the District Court properly considered the merits of AmSouth's estoppel defense. *See Curry v. City of Syracuse,* 316 F.3d 324, 331 (2d Cir.2003) (holding that unpleaded affirmative defense was properly considered by the district court where plaintiff had notice of the defense and an opportunity to respond).

### II. The Merits of AmSouth's Estoppel Defense

■ Although AmSouth's estoppel defense was properly considered by the District Court, the Court erred in concluding that AmSouth had presented sufficient evidence of the defense to justify subordinating the Roses' first-in-time assignment. As an initial matter, the alleged failure of the Roses to provide proper notice to Fidelity of their assignment, even if proven, would not in and of itself have affected the priority of the Roses' assignment. The relevant New York authorities, including those relied on by the District Court, have explicitly held that notice to the debtor is *not* required to preserve the priority of an

---

3. Federal Rule of Civil Procedure 8(c) provides in relevant part:
   In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

earlier assignment. *See, e.g., Fortunato v. Patten,* 147 N.Y. 277, 283, 41 N.E. 572 (1895) ("[A]s between different assignees of a chose in action by express assignment from the same person, the one prior in point of time will be protected, although he has given no notice of such assignment to either the subsequent assignee or the debtor."); *Superior Brassiere Co. v. Zimetbaum,* 214 A.D. 525, 212 N.Y.S. 473, 475 (1st Dep't 1925) ("By the first assignment, the rights of the assignor pass to the assignee.... Notice of the assignment to the debtor adds nothing to the right or title transferred.") (internal quotation marks omitted); *see also In re Leterman, Becher & Co.,* 260 F. 543, 547 (2d Cir.1919) ("[T]he courts of the state of New York have laid down the rule that, as between different assignees of a chose in action ... the one prior in point of time will be protected, although he has given no notice of such assignment to either the subsequent assignee or the debtor.").[4]

The District Court acknowledged this rule and then found that the Roses were estopped from asserting their superior title because their failure to give notice to Fidelity misled AmSouth into accepting the subsequent assignment as collateral. *Rose,* 296 F.Supp.2d at 394, 396. But the District Court's finding that plaintiff's omission was "a proximate contributing cause to AmSouth's deception," *id.* at 396, is not supported by the record, which shows that AmSouth issued the loan to the insured and received its assignment prior to receiving confirmation from Fidelity that there was no other recorded lien against the policy. *See Rose,* 296 F.Supp.2d at 388, 393 (stating that AmSouth obtained its assignment on January 29, 1997, and was told by Fidelity that AmSouth's was the first lien against the policy in a letter dated February 6, 1997). Without a showing of detrimental reliance on a misrepresentation of the Roses, there can be no estoppel. *United Commodities–Greece v. Fidelity Int'l Bank,* 64 N.Y.2d 449, 457, 489 N.Y.S.2d 31, 478 N.E.2d 172 (1985).

The District Court's additional finding, that Fidelity may never have had notice of the Roses' assignment, *Rose,* 296 F.Supp.2d at 386, 397, is also not supported by the record: the record does not include any statement from Fidelity that it

---

4. In reaching its conclusion that New York law subordinated the Roses' prior assignment, the District Court relied on *Salem Trust Co. v. Manufacturers' Finance,* 264 U.S. 182, 44 S.Ct. 266, 68 L.Ed. 628 (1924), and *Herman v. Connecticut Mutual Life Insurance Co.,* 218 Mass. 181, 105 N.E. 450 (1914), neither of which takes precedence over New York authorities. *See First Investors Corp. v. Liberty Mut. Ins. Co.,* 152 F.3d 162, 165 (2d Cir. 1998) (recognizing in a New York diversity action that "the job of the federal courts" is to give "the fullest weight to the pronouncements of the New York Court of Appeals," to have a "proper regard to relevant rulings of other courts of the State," and, where appropriate, give limited consideration to "relevant cases from other jurisdictions") (internal citations, quotation marks, and omissions omitted). In fact, the *Salem* Court, which ruled on the basis of then-extant "federal common law," specifically commented that if the Court

of Appeals had applied New York law, "the earlier assignee would [have] prevail[ed]." 264 U.S. at 191, 44 S.Ct. 266. *In re Gillespie,* 15 F. 734, 735 (S.D.N.Y.1883), on which the District Court also relied, similarly rests on federal common law. And though the District Court in this case properly looked to *State Bank of Mayville v. Jennings,* 78 Misc. 524, 138 N.Y.S. 606 (N.Y. Sup. Ct., Cattaraugus County 1912), this ruling of a lower New York court, which privileged a second-in-time assignment, carved out an exception to the general rule of "first in time, first in right" where the junior assignee took physical possession of the assignor's lease. That exception is not applicable here as defendant did not take physical possession of the insurance policy. *See* 138 N.Y.S. at 607. The case, moreover, is of limited precedential value in light of the controlling decisions of the New York Court of Appeals. *See, e.g., Fortunato,* 147 N.Y. 277, 41 N.E. 572.

never had notice of the assignment, but does include (1) testimony from Steven Dubin, the Fidelity field agent who brokered the policy, that he sent Fidelity a copy of the assignment in 1986, (2) a 1993 letter Dubin sent to Fidelity referencing the Split Dollar Agreement underlying the assignment, and (3) a 1999 letter Fidelity sent to plaintiffs stating in relevant part, not that Fidelity had no record of the assignment or the Split Dollar Agreement, but that Fidelity believed that the Agreement was no longer operative.

■ Having failed to establish an affirmative defense that would justify subordinating the Roses' prior assignment, AmSouth holds its assignment subject to the general New York rule, under which, "[a]s between successive assignees of the same chose in action[,] priority in point of time establishes priority of right ... without regard to the date of notification to the debtor." *Rochester Ropes, Inc. v. Scherl,* 121 F.2d 852, 852 (2d Cir.1941); *see also Cent. Trust Co. of N.Y. v. W. India Improvement Co.,* 169 N.Y. 314, 323–24, 62 N.E. 387 (1901); *Niles v. Mathusa,* 162 N.Y. 546, 552, 57 N.E. 184 (1900); *Superior Brassiere,* 212 N.Y.S. at 475; *Carnegie Trust Co. v. Battery Place Realty Co.,* 67 Misc. 452, 122 N.Y.S. 697, 698 (App. Term., N.Y. County 1910) (recognizing that where "two parties claim[ ] to be the owners of the same debt or chose in action, the party having the superior title [by virtue of his earlier assignment] may maintain an action for money had and received against the wrong claimant if [the wrong claimant] receives the money"); *Art–Camera Pix, Inc. v. Cinecom Corp.,* 64 Misc.2d 764, 315 N.Y.S.2d 991, 992 (Sup.Ct., N.Y. County 1970) ("Since the assignment was first in time it is, absent some statutory inhibition, entitled to precedence ...."). *See generally* 6A N.Y. Jur.2d *Assignments* § 78 (2004).

## CONCLUSION

For the reasons stated above, we conclude that:

(1) defendant did not produce sufficient evidence at trial to support an estoppel defense; and

(2) under New York law, in the circumstances presented, plaintiffs' valid first-in-time assignment is entitled to priority over defendant's subsequent assignment.

Accordingly, we reverse the judgment of the District Court and remand the cause with instructions to enter judgment in favor of plaintiffs and award appropriate damages.