09-3146-cv
Atateks Foreign Trade, Ltd. v. Private Label Sourcing, LLC

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of December, two thousand ten.

PRESENT:  JOSEPH M. McLAUGHLIN,
    REENA RAGGI,
    GERARD E. LYNCH,
      *Circuit Judges.*

--------------------------------------------------------------------------------
ATATEKS FOREIGN TRADE, LTD., JORDAN AND
ATATEKS DIS TICARET A.S.,
   *Plaintiffs-Counter-Defendants-Appellees*,


      v.          No. 09-3146-cv

PRIVATE LABEL SOURCING, LLC, SECOND
SKIN, LLC,
   *Defendants-Counterclaimants-Appellants*.
--------------------------------------------------------------------------------

APPEARING FOR APPELLANTS:  ANTHONY C. ACAMPORA, Silverman Acampora LLP, Jericho, New York.

APPEARING FOR APPELLEES:  ERIC J. GRANNIS, Esq., New York, New York.

Appeal from the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND

DECREED that the judgment entered on June 24, 2009, is AFFIRMED.

Defendants Private Label Sourcing LLC and Second Skin LLC appeal from a judgment entered after a bench trial awarding plaintiffs Atateks Foreign Trade Ltd. and Jordan and Atateks Dis Ticaret A.S. $1,454,996.33 in damages for breach of certain garment contracts. We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Alter Ego Liability

Defendants submit that the district court erred in piercing Private Label's corporate veil and holding Second Skin jointly and severally liable to plaintiffs. We review the district court's legal conclusions de novo, but we defer to its underlying factual findings unless they are clearly erroneous. See Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 38-39 (2d Cir. 2009). We review de novo mixed questions of law and fact. See Rose v. AmSouth Bank of Fla., 391 F.3d 63, 65 (2d Cir. 2004). Under New York law, which neither party disputes applies here, "the courts will disregard the corporate form, or, to use accepted terminology, pierce the corporate veil, whenever necessary to prevent fraud or to achieve equity." Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 140, 603 N.Y.S.2d 807, 810 (1993) (internal quotation marks omitted); accord Brunswick Corp. v. Waxman, 599 F.2d 34, 36 (2d Cir. 1979). A party urging piercing of a corporate veil must generally prove that "(1) the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other

2

wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." Freeman v. Complex Computing Co., 119 F.3d 1044, 1052 (2d Cir. 1997) (internal quotation marks and brackets omitted); accord Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d at 141, 603 N.Y.S.2d at 810-11.

### a. Domination and Control

Defendants do not dispute that the district court correctly identified the pertinent factors for determining the control element. See William Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991). Rather, relying on William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 601 (2d Cir. 1989), they maintain that the district court's findings that Private Label and Second Skin (1) failed to adhere to corporate formalities; (2) had overlapping owners, officers, directors, and personnel; and (3) shared office space and equipment, were insufficient to support a finding of control. We disagree. In William Passalacqua Builders, we instructed factfinders to consider the specified factors, among others, in deciding whether to pierce the corporate veil. See 933 F.2d at 139; see also MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 63 (2d Cir. 2001) (listing factors). Defendants concede both that the district court did not consider the absence of corporate formalities dispositive of the inquiry and that the finding of shared office space was "technically accurate." Appellant's Br. at 24.

In fact, the district court carefully weighed these factors in addition to other relevant evidence, which showed, inter alia, that Christine Dente, the co-owner of Private Label and

3

sole owner of Second Skin, directed Atateks to pay commissions directly to Second Skin, thereby diverting corporate funds from Private Label to Second Skin.[1]  The district court further found that Dente failed to provide a commercially reasonable explanation for such siphoning of funds from one entity to the other.  See, e.g., Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 18 (2d Cir. 1996) (observing that courts consider "siphoning off of funds").  The district court reasonably relied on this same conduct to find that Private Label and Second Skin did not deal with each other at arm's length and were not independent profit centers.  See William Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d at 139-40.  Indeed, 100% of Second Skin's 2005 and 2006 revenue was generated from such commissions paid by Private Label's clients.

We further identify no clear error in the district court's finding of inadequate capitalization based on Private Label's conceded insolvency.  On appeal, defendants argue

---

[1] We decline defendants' invitation to disregard the district court's siphoning finding. First, we identify no clear error because the finding is supported by Ilhan Arslan's testimony, which the district court found credible.  To the extent defendants now argue that Arslan's declaration contained inadmissible hearsay, that argument is waived by defendants' failure to object in the district court.  See Fed. R. Evid. 103.  In any event, the argument appears to lack merit because the challenged statements are by party opponents, which are not hearsay. See Fed. R. Evid. 801(d)(2)(D).

Second, defendants suggest that the challenged commission payments to Second Skin were "insignificant" compared to Private Label's revenues.  Appellant's Br. at 24. Defendants cite no case law indicating the relevance of such an argument to the issues on appeal.  In any event, the argument is unconvincing because the district court found that Private Label experienced substantial losses in 2005 and 2006, so the $306,085 paid in commissions were not insignificant and, indeed, were probative of domination and control, as well as plaintiffs' injury from inadequate capitalization.

for the first time that insolvency is not the same as inadequate capitalization, and that Private Label, though insolvent, had adequate capitalization for its business. Because this argument was not raised in the district court, we do not decide the question. See Singleton v. Wulff, 428 U.S. 106, 120 (1976); Virgilio v. City of N.Y., 407 F.3d 105, 116 (2d Cir. 2005). In any event, we have said that a factfinder may consider insolvency in determining whether to pierce the corporate veil. See, e.g., William Wrigley Jr. Co. v. Waters, 890 F.2d at 601.

In sum, the district court reasonably concluded from the totality of the evidence that Second Skin dominated and controlled Private Label.[2]

b.      Causation

Defendants further submit that the district court erred in finding that "control has been used to commit a fraud or other wrong; and . . . the fraud or wrong results in an unjust loss or injury to plaintiff." Freeman v. Complex Computing Co., 119 F.3d at 1052. The district court found that the constructive fraudulent transfer to Second Skin of more than $306,000

---

[2] William Wrigley Jr. Co. v. Waters, 890 F.2d 594, is not to the contrary. There, we observed that the decision to pierce the corporate veil "can be difficult, particularly in the case of small privately held corporations where the trappings of sophisticated corporate life are rarely present," and we reversed because the district court's decision to pierce the corporate veil was conclusory, we were "unable to isolate any evidence" warranting veil piercing, and indeed "the issue was barely the focus of the court's or the litigants' attention." Id. at 601. Nevertheless, we noted that veil piercing is warranted when "an abuse of that form either through on-going fraudulent activities of a principal, or a pronounced and intimate commingling of identities of the corporation and its principal or principals." Id. In its thorough decision in this case, the district court did not simply rely on the absence of corporate formalities but rather found abuse of the corporate form and commingling of corporate identities.

5

in commission payments, which should have been paid to Private Label, was a wrong resulting in plaintiffs' injury because the commissions exacerbated defendants' insolvency and rendered them less able to pay damages. See generally Electronic Switching Indus., Inc. v. Faradyne Elecs. Corp., 833 F.2d 418, 424 (2d Cir. 1987) (explaining that plaintiff must "prove that this control and domination was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights"). The conclusion is grounded in law. See Austin Powder Co. v. McCullough, 216 A.D.2d 825, 827-28, 628 N.Y.S.2d 855, 857 (3d Dep't 1995) (piercing corporate veil when "plaintiff has been injured as a result of [defendant's company's] undercapitalization and [defendant's] personal use of corporate funds which resulted in a judgment against [the company] which [it] is unable to pay"). Further, the fact that commissions were paid in 2005, before the parties' business relationship broke down in 2006, does not compel the conclusion that the district court's finding was clearly erroneous.

Defendants nonetheless submit that the roughly $1.5 million liability imposed on Second Skin for being Private Label's alter ego was disproportionate to the roughly $306,000 in commissions paid to Second Skin. This argument confuses the fraudulent transfer statute, which the district court correctly recognized generally limits recovery to the particular property that was fraudulently transferred, see, e.g., Manufacturers & Traders Trust Co. v. Lauer's Furniture Acquisition, Inc., 226 A.D.2d 1056, 1057, 641 N.Y.S.2d 947, 948 (4th Dep't 1996), and piercing the corporate veil, which permits plaintiffs to hold those behind

6

the corporation liable "for some underlying corporate obligation," <u>Morris v. N.Y. State Dep't of Taxation & Fin.</u>, 82 N.Y.2d at 141, 603 N.Y.S.2d at 810. Defendants direct us to no authority for their proportionality argument in the latter context.

Accordingly, we identify no error in the district court's decision that Second Skin was Private Label's alter ego.

### 2. <u>Constructive Fraudulent Transfer</u>

Having concluded that the district court properly determined that Second Skin was Private Label's alter ego, so as to be jointly and severally liable for all damages, we need not address defendants' challenge to the district court's conclusion that plaintiffs could reach $306,085 in commission payments because they were constructively fraudulent transfers to Second Skin. In any event, we identify no merit in defendants' arguments.

First, defendants fault the sufficiency of the district court's findings regarding Private Label's satisfaction of the statutory definition of insolvency. <u>See</u> N.Y. Debt. & Cred. Law § 271 ("A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."). We are not persuaded. The district court reasonably relied on the testimony of defendants' own accountant, who stated that "Private Label has been technically 'insolvent' throughout those four years [2003-2006]." Huber Decl. ¶ 4. Although, on appeal, defendants assert that this statement, and by extension the district court's insolvency finding, relied on book value, which is "not ordinarily an accurate reflection of the market

7

value of an asset," Lawson v. Ford Motor Co. ("In re Roblin Indus., Inc."), 78 F.3d 30, 36 (2d Cir. 1996), we can hardly fault the district court for not making more precise findings regarding market value when defendants made no such argument in that court.[3] Further, book value is, "in some circumstances, competent evidence from which inferences about a debtor's insolvency may be drawn." In re Roblin Indus., Inc., 78 F.3d at 36. Although defendants submit that contrary record evidence might have supported the opposite inference, that hardly demonstrates clear error. See id. at 35 (reviewing insolvency finding for clear error); see also Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.").

Second, relying on In re Best Prods. Co., 168 B.R. 35 (Bankr. S.D.N.Y. 1994), and Stewart v. Edgecomb, 168 Misc. 866, 6 N.Y.S.2d 563 (Sup. Ct. Broome Cnty. 1938), defendants contend that plaintiffs' participation in paying commissions to Second Skin precludes them from claiming that those commissions were constructively fraudulent transfers. Because this argument, too, was never raised in the district court, either as it

---

[3] Defendants did argue that the record, including the Huber declaration, did not support a finding of insolvency based on Huber's definition of "legal insolvency," as opposed to "accountancy insolvency." As the district court recognized, however, the definitions of insolvency then advanced by defendants were contrary to New York law. See N.Y. Debt. & Cred. Law § 271. Defendants direct us to no part of the trial record where they suggested that taking account of the market value of Private Label's assets would have supported a finding of solvency.

8

relates to plaintiffs' fraudulent transfer claim or to veil piercing, we do not address it. See

Singleton v. Wulff, 428 U.S. at 120.

Accordingly, we identify no clear error in the district court's insolvency finding.

3.       Contract Claim

Defendants submit that the district court erred in finding that the parties agreed to

convert certain garment transactions from a "direct letter of credit" basis (where Target, the

purchaser of plaintiffs' clothing, paid Atateks directly via a line of credit, and Atateks was

responsible for shipping its garments directly to Target's appointed forwarder) to a

"warehouse" basis (where Private Label paid Atateks directly for, and took possession of,

the garments). Whatever its relevance for defendants' liability, the district court's finding

that the relevant transactions were converted from a direct letter of credit basis to a

warehouse basis relied on emails that preceded the October 2006 meeting, at which the court

found there was no meeting of the minds on other issues.[4] We review the district court's

factual findings deferentially, and we will not upset them "unless we are left with the definite

and firm conviction that a mistake has been committed." Vasquez v. GMD Shipyard Corp.,

582 F.3d 293, 297 (2d Cir. 2009) (internal quotation marks omitted). Defendants have not

convinced us that there was any such clear error here.

We have considered defendants' remaining arguments on appeal and conclude that

---

[4] In fact, it seems the parties agreed at trial that all relevant transactions were either commenced on or converted to a warehouse basis. See Trial Tr. at 42 (Dente cross-examination) (acknowledging that all of the shipments at issue in this lawsuit were warehouse shipments).

they lack merit.  Accordingly, we AFFIRM the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court