19-440-cv (L)
*Broker Genius Inc. v. Drew Gainor, Seat Scouts LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of April, two thousand twenty.

PRESENT:     GERARD E. LYNCH,
             DENNY CHIN,
                  *Circuit Judges*,
             PAUL A. ENGELMAYER,
                  *District Judge.* [*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BROKER GENIUS INC.,

        *Plaintiff-Counter-Defendant-Appellee*,

      -v-                           19-440-cv; 19-2686-cv

DREW GAINOR, SEAT SCOUTS LLC,

        *Defendants-Counter-Claimants-*
        *Appellants*,

---

[*]     Judge Paul A. Engelmayer, of the United States District Court for the Southern District of New York, sitting by designation.

GUINIO VOLPONE, EVENT TICKET SALES LLC,
RAY VOLPONE, 4311 N 161st St Omaha,
NE 68116, STUART GAINOR, 69 Yates Rd
Manalapan, NJ 07726, VOLPONE SOFTWARE LLC,
7202 Giles Road Suite 4 #330 La Vista, NE 68218,
GAINOR SOFTWARE LLC, 5706 Belmont Valley Ct.
Raleigh, NC 27602,

            *Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR PLAINTIFF-COUNTER-
DEFENDANT-APPELLEE:

VERONICA MULLALLY MUÑOZ,
(Daniel J. Melman, *on the brief*), Pearl
Cohen Zedek Latzer Baratz LLP, New
York, New York.

FOR DEFENDANTS-COUNTER-
CLAIMANTS-APPELLANTS:

CHRISTOPH C. HEISENBERG,
Hinckley & Heisenberg LLP, New York,
New York.

Appeal from the United States District Court for the Southern District of

New York (Stein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED,**

**ADJUDGED, AND DECREED** that the judgment and order of the district court are

**AFFIRMED.**

Plaintiff-counter-defendant-appellee Broker Genius Inc. ("Broker Genius")

brought this action alleging that defendants-counter-claimants-appellants Drew Gainor

and Seat Scouts LLC ("Seat Scouts," and together "defendants") breached their contract

and misappropriated proprietary information. At trial, the jury found for Broker

Genius and awarded it $3,000,000 on its breach of contract claim and $1,500,000 on its

2

unfair competition claim. Thereafter, the district court entered a permanent injunction restraining defendants from developing any products derived from Broker Genius's ticket pricing product. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Broker Genius is a technology company serving ticket brokers on the secondary market. AutoPricer is a web application created by Broker Genius that allows ticket brokers to automatically and dynamically price their tickets. Use of Broker Genius's products was subject to conditions set forth in Broker Genius's Terms of Use (the "ToU"), which included an agreement not to "[m]odify, adapt . . . , reverse engineer, decompile or disassemble any portion of the Site or Apps or otherwise attempt to derive any source code or underlying ideas or algorithms of any part of the Site or Apps" or "[r]eproduce, modify, display . . . or create derivative works of the Site or Apps or the Content." Appellee's App'x at 1977-78.

Broker Genius alleged that Gainor, co-founder of Seat Scouts, a competitor site, used knowledge and information about AutoPricer obtained while Gainor was a customer of Broker Genius to develop a similar product, Command Center, in violation of the ToU. Broker Genius sought a preliminary injunction against defendants enjoining them from using, providing, or making available Command Center. The preliminary injunction was granted on May 11, 2018. The preliminary injunction went into effect on May 14, 2018, and that same day defendants debuted Event Watcher, a

3

product with substantially the same features as the enjoined Command Center. Finding

that "the preliminary injunction clearly and unambiguously enjoins Command Center,

which is the same as Event Watcher," the district court held defendants in contempt.

S. App'x at 41, 45.

After the district court entered judgment on the jury verdict and issued a

permanent injunction, defendants moved for judgment as a matter of law pursuant to

Federal Rule of Civil Procedure 50(b) or for a new trial pursuant to Rule 59(a). The

motion was denied.[2] This appeal followed, as defendants raise a host of issues.

## I.    Broker Genius's Proprietary Interest in AutoPricer

Defendants first challenge the jury's finding that Broker Genius had a

proprietary interest in AutoPricer.[3] Under New York law, unfair competition includes

---

[2]    Defendants previously appealed the district court's entry of the preliminary injunction. However, the trial and entry of the permanent injunction occurred before the appeal could be decided, mooting the appeal. *See Broker Genius Inc. v. Gainor*, 756 F. App'x 81 (2d Cir. 2019) (summary order).

[3]    Although not explicitly so argued by defendants, we construe the appeal of this issue as a challenge to the district court's denial of its 50(b) motion as it is fundamentally a challenge to the sufficiency of the evidence. *See Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004). We review *de novo* a district court's denial of a Rule 50(b) motion. *See Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004). A district court may grant a Rule 50(b) motion only "if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008) (internal quotation marks and citation omitted).

4

"taking the skill, expenditures and labors of a competitor," as well as "misappropriat[ing] for the commercial advantage of one person . . . a benefit or property right belonging to another." *Roy Exp. Co. Establishment of Vaduz v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (internal quotation marks and citations omitted); *see also Metro. Opera Ass'n v. Wagner-Nichols Recorder Corp.*, 101 N.Y.S.2d 483, 492 (Sup. Ct., N.Y. County 1950) (noting that "the effort to profit from the labor, skill, expenditures, name and reputation of others . . . constitutes unfair competition which will be enjoined").  A misappropriation claim, however, cannot be premised on publicly available information.  *See Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 693 n.11 (1st Dep't 2015).

Here, Broker Genius required users to accept the ToU, which included restrictions on the reproduction and distribution of the user content and data. Moreover, while defendants contend that AutoPricer was not confidential because Broker Genius publicly disclosed it in its patent application, during marketing demonstrations, and in an in-court demonstration, there was extensive testimony that the information disclosed in these forums was limited.  Accordingly, the record contains sufficient evidence to support the jury's finding that Broker Genius had a proprietary interest in AutoPricer.

5

## II. Breach of Contract Claim

Defendants contend that the court erroneously interpreted the ToU when it determined that "derivative works" was not to be read as importing the framework of copyright law. We review contract interpretation *de novo*. *See 32BJ N. Pension Fund v. Nutrition Mgmt. Servs. Co.*, 935 F.3d 93, 98 (2d Cir. 2019).

Here, Broker Genius alleged breach of contract and unjust enrichment. The ToU provided that the user shall not, *inter alia*, "attempt to derive any source code or underlying ideas or algorithms of any part of the Site or Apps" or "create derivative works of the Site or Apps or the Content." Appellee's App'x at 1977-78. The district court instructed the jury, in relation to the breach of contract claim, that "[t]he term 'derived' means something originates from something else. A later-created product is derived from an earlier product if, one, the two products or elements therein are similar; and two, the commonalities present in the later-created product are traceable to the earlier one." Appellee's App'x at 1930-31. This instruction was not error.

Defendants contend that the contractual prohibition on "creat[ing] derivative works of the Site or Apps or the Content" could not support such an instruction because, in their view, that provision did no more than track the definition of "derivative works" contained in the Copyright Act. Appellee's App'x at 1978. But even if this were so -- and the Court has no occasion to reach that question -- the instruction was warranted based on the provision that more broadly prohibited

6

defendants from "attempt[ing] to derive any source code or underlying ideas or algorithms of any part of the Site or Apps."   Appellee's App'x at 1977.

Defendants' reliance on an earlier decision in which the district court found that the relevant provision in the ToU "essentially tracks the language of the Copyright Act of 1976" is misplaced.  *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 522 (S.D.N.Y. 2017) (brackets omitted).  There, the court found only that the relevant contract provisions were not the functional equivalent of a confidentiality clause; it did not, as defendants claim, conclude that copyright law governed -- let alone exclusively governed -- the terms of the contract.  Accordingly, the district court did not err in declining to instruct the jury that the breach of contract claim was governed by copyright law.

Finally, there was sufficient evidence for a reasonable jury to find that defendants breached the ToU, on the ground that Command Center was derived from AutoPricer's underlying ideas.  Accordingly, the district court did not err in permitting the breach of contract claim to reach the jury or in sustaining the jury's verdict, in Broker Genius's favor, on that claim.

## III.   Misappropriation Claim

Defendants further argue that Broker Genius's misappropriation claim is preempted by the Copyright Act and that the district court erred when it concluded that defendants had waived their preemption defense.  We review a district court's

7

determination that a party has waived an argument by failing to raise it earlier in a proceeding for an abuse of discretion. *See Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012). Affirmative defenses raised late in a proceeding may be subject to waiver, *see Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003), though waiver "may not be proper where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party," *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004).

Here, defendants first argued that Broker Genius's unfair competition claim was preempted by the Copyright Act in the pretrial order, less than a month before the start of the trial and over a year after the action commenced. Defendants do not provide any reason why they did not raise the affirmative defense earlier, nor do they contend that they raised the argument at the "first pragmatically possible time." *Id.* Accordingly, it was not an abuse of discretion for the district court to find that it was waived. *See Saks*, 316 F.3d at 350.

## IV. Allegedly Prejudicial Comments by the Court

Defendants next contend that, during the trial, the court engaged in prejudicial questioning of defendants' witnesses and made prejudicial comments that suggested to the jury that the court favored Broker Genius. "In reviewing a challenge to a trial judge's conduct, we determine not whether the . . . conduct left something to be desired . . . [but] whether the judge's behavior was so prejudicial that it denied [a party]

8

a fair, as opposed to a perfect, trial." *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 98 (2d Cir. 1998) (internal quotation marks omitted). Provided the court does not "become an advocate for one side," we have held that "the trial court may actively participate and give its own impressions of the evidence or question witnesses, as an aid to the jury . . . ." *United States v. Filani*, 74 F.3d 378, 385 (2d Cir. 1996).

Here, our review of the record persuades us that the district court did not overstep its bounds as it was seeking only clarification for the jury. Moreover, the court expressly instructed the jury that "the reasons for my questions almost always are to help elicit things that I think may be unclear to the jury. . . . But I assure you, I have no view of the facts here. That's your job." Appellee's App'x at 1428. Accordingly, we find that the district court's conduct did not deny defendants a fair trial.

## V. Evidentiary Rulings

Defendants further argue that the court erred when it allowed Broker Genius to reference the ruling finding defendants in contempt of the preliminary injunction, barred evidence of Broker Genius's rejected patent application, and denied defendants' request to introduce a discovery order to rebut Broker Genius's reference to Gainor's "missing laptop." Appellant's App'x at 227-30. We review a district court's evidentiary rulings for abuse of discretion, reversing only for manifest error. *See Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010).

9

Here, regarding the contempt ruling, the district court circumscribed the extent to which it could be discussed, and determined that, subject to these limits, the ruling was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice.  As for the rejected patent application, the district court found that its probative value was "almost nil" and that there was significant danger of confusing the issues, misleading the jury, and causing undue delay.  Appellee's App'x at 917-18.  Finally, we identify no abuse of discretion in the district court's exclusion of the discovery order.  The district court's conclusions were not manifestly erroneous.

## VI.    Contempt Finding

Defendants contend that the district court erroneously found them in contempt of the preliminary injunction.  We review a district court's finding of contempt under an abuse of discretion standard, though a "more exacting" standard than usual "because a district court's contempt power is narrowly circumscribed." *Perez v. Danbury Hosp.*, 347 F.3d 419, 423 (2d Cir. 2003).  We review *de novo* any rulings of law made by the district court.  *See S. New Eng. Tel Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 145 (2d Cir. 2010).  A party may be held in civil contempt where the order is clear and unambiguous, proof of noncompliance is clear and convincing, and the contemnor has not attempted to comply in a reasonable manner.  *See Paramedics Electromedicina Comerical, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004).

Here, the injunction was clear and unambiguous in enjoining defendants from "using or providing or making available" Command Center because Command Center was likely "created and . . . distributed in violation of the Terms of Use agreement." Appellee's App'x 118-19. Evidence of defendants' non-compliance was clear and convincing. Defendants attempted to circumvent the injunction by creating Event Watcher, which shared all the features of Command Center with the exception of the capability to automatically update prices, and even there they immediately made available a patch that allowed customers to restore the automatic pricing update feature. Following extensive briefing and a hearing, the district court determined that Event Watcher was "one [and] the same product" as the enjoined Command Center and found defendants in contempt. S. App'x at 36. Finally, the district court concluded that defendants did not make a reasonably diligent attempt to comply with the preliminary injunction, finding that their requests for clarification were disingenuous. The district court did not abuse its discretion when it found defendants in contempt for violation of the preliminary injunction.

## VII. Damages Award

Defendants argue that the jury's award of $4,500,000 in damages was not supported by evidence and was inconsistent. "[J]uries have wide latitude in setting compensation for damages," and "our review is narrow, considering only whether the award is so high as to shock the judicial conscience and constitute a denial of justice."

11

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 162 (2d Cir. 2014) (internal quotation marks omitted).

Here, the award was supported by evidence, as Broker Genius's CFO testified that Broker Genius had missed its projected revenue for 2018 by $9,000,000, partly due to competition from defendants' product. The award neither shocks the judicial conscience nor results in a denial of justice; accordingly, we will not disturb the award.

## VIII. Permanent Injunction

Finally, defendants argue that the district court erred in issuing the permanent injunction because the jury's damages award incorporated future damages, AutoPricer was in the public domain, and the permanent injunction is unconnected to the actual violation. We review a district court's grant of a permanent injunction for abuse of discretion. *See Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 408 (2d Cir. 2013).

Here, as the district court found, Broker Genius suffered loss of good will and damage to its reputation that cannot be compensated through monetary damages alone and defendants' past conduct demonstrated the likelihood that they would continue to offer products derived from AutoPricer absent an injunction. Moreover, because the jury was instructed that it could find for Broker Genius only if Broker Genius had a proprietary interest in AutoPricer, defendants' argument that AutoPricer

12

is in the public domain is unavailing. Finally, the injunction, prohibiting defendants from "making, using, [or] distributing . . . [a] software product derived, in whole or in part, from . . . Auto Pricer[]," clearly delineates the prohibited conduct. S. App'x at 4-5. Accordingly, we conclude that the district court did not abuse its discretion when it entered the permanent injunction.

\* \* \*

We have considered defendants' remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

13